THE HON. HENRY C. SMITH,
THE HON. WILLIAM L. HOLLOWAY, } Associate Justices.

---

FORQUER, RESPONDENT, *v.* NORTH ET AL., APPELLANTS.

(No. 2,897.)

(Submitted November 17, 1910. Decided December 6, 1910.)

[112 Pac. 439.]

*Personal Injuries—Master and Servant—Negligence—Complaint
—Sufficiency—Evidence—Offer of Proof—Excessive Verdict.*

Master and Servant—Personal Injuries—Negligence—Proximate Cause—
Complaint—Sufficiency.
1. Plaintiff, a boy thirteen years old, was injured while operating
a pug-mill in defendant's brick factory. The complaint alleged that
plaintiff was directed to use a hose to turn water on the clay and
feel it as it emerged from the machine; that there was danger in
such operation; that defendants knew of the need of instruction as
to such danger, and that it was their duty to use reasonable care to
give plaintiff such instructions in regard to the performance of his
duties as would have enabled him to sense and avoid the danger;
that this they negligently and carelessly failed to do; that at the
time of his injury, he was feeling the clay with his right hand and
wetting it with the hose in his left hand, whereupon the left hand,
while holding the hose, was carried forward against the knives of the
machine and injured. *Held,* that the complaint was not defective for
failure to allege that defendants' negligence in failing to instruct
plaintiff was the cause of the injury.

Same—Negligence—Pleading—Characterization of Acts.
2. Where the doing of certain acts under certain circumstances con-
stitutes negligence, it is sufficient, after specifying the acts, to allege

(272)

that they were negligently done, or if a failure to do certain acts constitutes negligence, then it is sufficient after specifying the acts to say that defendant negligently failed to do them.

Same—Safe Place to Work—Safe Appliances.
3. A master is bound to use ordinary care to furnish a servant with a safe place to work, and reasonably safe appliances.

Same—Complaint—Warning.
4. Where a complaint for injuries to a servant alleged negligence in failing to warn, it was not objectionable for failure to allege the particular warning required, or the particular danger to be apprehended, in the absence of a special demurrer for uncertainty.

Same—Negligence—Failure to Warn—Evidence.
5. In an action for injuries to a minor servant while operating a pug-mill in a brick factory, evidence *held* to justify a finding that defendants were negligent in failing to warn plaintiff of the danger in doing his work in the manner he did, and that such negligence was the proximate cause of the accident.

Same—Method of Work—Improbable Injury.
6. Where plaintiff, a minor, operating a pug-mill, was injured while doing the work according to directions, and such method was in itself dangerous and resulted in his injury, defendants were chargeable with actual knowledge of the dangers to be apprehended, and hence it was immaterial that the immediate cause of the injury was an accelerated flow of water through a hose, which was a wholly fortuitous occurrence, provided plaintiff did not contribute thereto.

Same—Duty of Master—Anticipation of Dangers.
7. Where defendants furnished plaintiff water in a hose with which to wet down clay as it emerged from a pug-mill in a brick factory, they were chargeable with notice of how the water would flow in the hose, and that a sudden acceleration in the pressure of the water might cause the hands of a boy of plaintiff's age to be thrown against the knives of the machine and injured, and hence bound to take steps to guard against such an injury.

Appeal and Error—Objections—Review.
8. An objection to evidence not made at the trial cannot be reviewed on appeal.

Same—Exclusion of Evidence—Offer of Proof—Necessity.
9. The sustaining of an objection to a question is not reviewable, where no offer of proof is made, and the evidence expected is not disclosed.

Trial—Evidence—Materiality—Motion to Strike.
10. Where plaintiff, a boy thirteen years old, was injured while operating a pug-mill in a brick factory, proof that he occasionally threw mud balls and threw water at the men was properly stricken, where no causal connection was shown between such acts and the injury.

Appeal and Error—Objection to Instruction.
11. Where an objection made to an instruction on appeal was not presented to the trial court, it should not be considered.

Personal Injuries—Amount Recovered—Excessive Verdict.
12. Plaintiff, a boy thirteen years old, was employed to wet and watch clay coming from a pug-mill in a brick factory, and as he was doing so his hand was carried against certain knives and injured. He was in a hospital over a week, and suffered pain in his hand and shoulder. It was six weeks before his hand healed, during which time he suffered pain and loss of sleep. When it healed, it was found that he had lost the use of one and perhaps two of his fingers,

though it was problematical whether such condition was permanent. The hand was quite badly torn, and his physician testified that he treated it in the neighborhood of two months, and that after healing resultant tenderness to pressure in the palm of the hand might result and that it would be susceptible to the influence of heat and cold. *Held,* that while a verdict for $10,000 was excessive and should be reduced to $4,000, it was not so excessive as to evince passion and prejudice on the part of the jury.

*Appeal from District Court, Yellowstone County; Sydney Fox, Judge.*

ACTION by Claude Earl Forquer, a minor, by C. F. Forquer, his guardian *ad litem,* against Austin North and the Slater Brick Company. Judgment for plaintiff, and defendant brick company appeals. Affirmed on condition.

*Messrs. Gunn & Hall,* and *Messrs. Hathhorn & Brown,* submitted a brief, a supplemental and a reply brief, in behalf of Appellants. *Mr. M. S. Gunn* argued the cause orally.

The complaint does not state a cause of action, because there is not any causal connection shown between the negligence charged and the injury. It is not alleged that the failure to instruct, which is the only negligence alleged, caused or had anything to do with the injury. "The mere existence of a defect, the mere occurrence of an accident, the mere omission of a duty, are not sufficient to create a liability. It is necessary to proceed further, and to show that the defect or omission of duty caused the accident." (*Arizona Lumber Co.* v. *Mooney,* 4 Ariz. 366, 42 Pac. 952; *Fearon* v. *Mullins,* 35 Mont. 232, 88 Pac. 794; *Peerless Stone Co.* v. *Wray,* 10 Ind. App. 324, 37 N. E. 1058; *La Fayette Carpet Co.* v. *Stafford,* 25 Ind. App. 187, 57 N. E. 944; *South Bend Chilled Plow Co.* v. *Cissne,* 35 Ind. App. 373, 74 N. E. 282; *Alabama etc. Co.* v. *Marcus,* 128 Ala. 355, 30 South. 679; *Bahr* v. *National Safe Deposit Co.,* 234 Ill. 101, 84 N. E. 717.) The complaint in a personal injury action must affirmatively show that the negligence of the defendant was the proximate cause of the injury. (*Smith* v. *Buttner,* 90 Cal. 95, 27 Pac. 29; *Paige Iron Works* v. *Hutter,* 107 Ill. App. 673; *Baltimore etc. Ry. Co.* v. *Young,* 146 Ind. 374, 45 N. E. 479; *Minnuci* v. *Philadel-*

*phia etc. Ry. Co.,* 68 N. J. L. 432, 53 Atl. 229; *Prokop* v. *Gulf etc. Ry. Co.,* 34 Tex. Civ. App. 520, 79 S. W. 101; *Chicago B. & Q. Ry. Co.* v. *Clinebell,* 5 Neb. (Unof.) 603, 99 N. W. 839; *Leynes* v. *Tampa Foundry,* 56 Fla. 488, 47 South. 918; *So. Ry. Co.* v. *Sittasen,* 166 Ind. 257, 76 N. E. 973.) Respondent may contend that from the facts alleged in the complaint it is to be inferred that the injury was caused by the failure to warn and instruct. It is a well-established rule of pleading under the Codes that facts which are necessarily implied from the averments need not be alleged directly. (*Silver Bow Co.* v. *Davies,* 40 Mont. 418, 107 Pac. 81; Baylies' Code Pleading, p. 49.) But it is also true that it is not sufficient that a fact may be inferable from the facts pleaded, where it is not necessarily implied or understood. (*Brown* v. *Brown,* 133 Ind. 476, 33 N. E. 615; *Conrad Nat. Bank* v. *Great Northern Ry. Co.,* 24 Mont. 178, 61 Pac. 1.)

The complaint shows that the negligence charged was not the proximate cause of the injury. It appears therefrom that the injury was occasioned by the hand being "carried forward to and against one of said knives in its upward motion and carried upward and against said metal frame." In fact, the complaint expressly charges that it was in consequence of this movement of the hand that the injury was occasioned. What carried the hand forward does not appear by direct allegation or even by any inference which can be drawn from the complaint. The plaintiff may have so slipped or stumbled as to move his body and hand forward. Someone may have pushed the plaintiff or jostled against him, with the result that his hand was carried forward. There may have been some substance in the water which choked the nozzle of the hose, thereby disturbing the equilibrium of the hand. The allegations of the complaint may be accepted as absolutely true and still either of the causes mentioned may have occasioned the injury. (*Leynes* v. *Tampa Foundry Co.,* 56 Fla. 488, 47 South. 918; *Edwards* v. *Brayton,* 25 R. I. 597, 57 Atl. 784; *Zopfi* v. *Postal Telegraph-Cable Co.,* 60 Fed. 987, 9 C. C. A. 308; *Afflick* v. *Bates,* 21 R. I. 281, 79 Am. St. Rep. 801, 42 Atl. 539.)

This court having held that the testimony at the former trial was insufficient to establish a liability, and the testimony at the last trial with reference to the accident not differing from the former testimony, the former decision of this court is the law of the case, and precludes any recovery upon the testimony introduced at the last trial. (*Easterly* v. *Jackson,* 36 Mont. 205, 92 Pac. 480; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Westerfield* v. *New York Life Ins. Co.,* 157 Cal. 339, 107 Pac. 699.) The testimony fails to show that the negligence charged caused the injury; hence recovery is not warranted. (*Buckley* v. *Gutta-Percha & Rubber Co.,* 113 N. Y. 540, 21 N. E. 717; *Fronk* v. *City Steam Laundry,* 70 Neb. 75, 96 N. W. 1053; *Siddall* v. *Pacific Mills,* 162 Mass. 378, 38 N. E. 969; *Hickey* v. *Taaffe,* 105 N. Y. 26, 12 N. E. 286.)

There is no evidence whatever to show that the negligence alleged would have produced the injury, without the interposition of the independent cause—the sudden pressure of water in the hose—and there is no evidence to show that this independent cause could have been reasonably anticipated. Therefore, the intervening cause—the sudden pressure of water in the hose—is the only proximate cause. (See *American Bridge Co.* v. *Seeds,* 144 Fed. 605, 11 L. R. A., n. s., 1041, 75 C. C. A. 407.) Defendants cannot be held liable for an injury resulting from an accident which they could not reasonably have anticipated. (*Diehl* v. *Standard Oil Co.,* 70 N. J. L. 424, 57 Atl. 131; *Glenesky* v. *Kimberly Co.,* 140 Wis. 52, 121 N. W. 893.)

It was error to sustain the objection to the question propounded to the witness Bray, whether he had ever known or heard of an accident happening in the manner testified to by plaintiff. It was material to inquire whether the defendants had any reason to anticipate the happening of such an accident, and the testimony was therefore exceedingly material. (*Doyle* v. *Railway Co.,* 42 Minn. 79, 43 N. W. 787; *Arizona Lumber Co.* v. *Mooney,* 4 Ariz. 366, 42 Pac. 952; *Pullman Co.* v. *Caviness* (Tex. Civ. App.), 116 S. W. 410.)

As the respondent has had two fair opportunities to make out his cause of action, and as the evidence was substantially the

same at each trial, and it is apparent from the record that no additional evidence is available, we respectfully submit that the judgment of the lower court should be reversed and judgment ordered by this court for appellants. (*State* v. *District Court,* 40 Mont. 206, 105 Pac. 721; *Pullman Co.* v. *Caviness* (Tex. Civ. App.), 116 S. W. 410.)

In behalf of Respondent, there was a brief, as well as one in reply to supplemental brief of appellants, by *Mr. W. M. Johnston, Mr. Wm. Wallace, Jr.,* and *Mr. R. F. Gaines. Mr. Gaines* argued the cause orally.

Appellants challenge the sufficiency of the amended complaint to support the verdict. We insist that the pleading, to say the most, is no more than uncertain or ambiguous in its terms, when construed with reference to the question presented by appellants. Reading all of the allegations of the amended complaint together, as must be done, and, with a certain change in punctuation, we are at a loss to discover any force to appellants' argument on this branch of the case. We are not here asking the court to read into the amended complaint any allegation or words that are missing, or even to ignore any allegations or words present. We simply ask that, in view of the former decisions of this court upon similar questions, of the evident intention of the pleader, of the theory of action as announced in the former decision of this action, and of the demands of justice, the court, in considering the sufficiency of the amended complaint, shall assume, or supply needed punctuation—in other words, that the court shall disregard strict rules of grammatical construction. That this should be done is well settled by the decisions of this court. (*Conrad Nat. Bank* v. *Great Northern Ry. Co.,* 24 Mont. 178, 61 Pac. 1; *Logan* v. *Billings etc. Ry. Co.,* 40 Mont. 467, 107 Pac. 415; *State* v. *Quantic,* 37 Mont. at p. 58, 94 Pac. 491.) These Montana decisions but express the consensus of judicial opinion on this subject throughout the country—*viz.,* that after verdict and judgment, if by any reasonable construction a complaint can be upheld, it will be so construed. (4 Ency. of Pl. & Pr. 744,

citing cases; *Casey* v. *Bridge Co.,* 95 Minn. 11, 103 N. W. 623; *Hart* v. *City,* 125 Wis. 546, 104 N. W. 701, 1 L. R. A., n. s., 952, 4 Ann. Cas. 1085.) The amended complaint might, by a different use of the English language, be made more definite and more certain than it is; but we have in this action no special demurrer (as provided by statute) as for uncertainty, indefiniteness, or ambiguity, and it is now too late to raise any such questions. (*Sanderson* v. *Power Co.,* 19 Mont. 236; Phillips on Code Pleading, sec. 352.) "All formal and purely technical defects are cured by verdict." (31 Cyc. 767; see, also, *Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Raymond* v. *Wimsette,* 12 Mont. 551, 33 Am. St. Rep. 604, 31 Pac. 537; *Quirk* v. *Clark,* 7 Mont. 231, 14 Pac. 669.)

MR. JUSTICE SMITH delivered the opinion of the court.

This is the second appeal in this case. (See *Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843.) The complaint has been amended and a retrial had, resulting in a verdict against both defendants in the sum of $10,000. From a judgment entered on the verdict and an order denying a new trial, they have appealed.

The amended complaint, after alleging the plaintiff's age, thirteen years, continues as follows:

"(4) That among the duties of plaintiff's said employment he was required to throw said pug-mill in and out of gear and to oil the same, and he was likewise directed by his said employers, and it was then and there a part of his duty, to take a certain hose used in connection with said machine and to turn water upon the clay which was being fed through the same and to feel of said clay as it was emerging from said machine to ascertain the degree of moisture therein.

"(5) That said pug-mill was a complicated piece of machinery and at its mouth, where said clay emerged, there were two cutting knives revolving upon a cylinder or rod which in their revolution upward and at the top passed into a metal frame whose sides came very close to said knives, and because thereof

there was danger of injury from said knives and frame in the operation aforesaid of watering and feeling of said clay as the same emerged from said mill.

"(6) That plaintiff was in fact wholly inexperienced in the use of said mill and was without experience in the use of any machinery and did not in fact know, and by reason of his youth and inexperience in the use of machinery could not have reasonably known, of the danger incident to feeling said clay with one hand and wetting the same with the water from the hose held in his other hand, and in the manner aforesaid, but that defendant either knew, or in the exercise of reasonable care ought to have known, of the said inexperience of plaintiff and his need of instruction as to said danger, and it then and there became and was the duty of defendants, and each of them, to use reasonable care to give this plaintiff such instruction in regard to the performance of said duties as would have enabled him to sense and avoid said dangers, but that this they negligently, carelessly, and wholly failed to do."

"(8) That on August 16, 1906, and while in the obedience of said direction of defendants, plaintiff was feeling of said clay as it emerged from said mill with his right hand and at the same time holding said hose in his left hand and therewith wetting the said clay, and while he was in ignorance of the danger connected with said operation, and so without instruction as to said danger by reason of the negligence of said defendants, and without any intention on the part of plaintiff so to do, his left hand then holding said hose was carried forward to and against one of said knives in its upward motion and carried upward and against said metal frame," in consequence whereof he was injured. There was no demurrer to the amended complaint, but at the commencement of the trial the objection was made that it did not state facts sufficient to constitute a cause of action.

1. This court held on the former appeal that the evidence was insufficient to warrant a finding that the defendant Slater Brick Company was negligent in failing to guard the knives or in furnishing a defective hose. We held, also, that in cases like this

it is a question of fact for the jury to determine whether the plaintiff required warning instructions, and, if so, whether the defendant had reasonably fulfilled its duty in that regard. The amended complaint predicates negligence solely upon failure to warn of danger. Counsel for the appellants now urge: "The complaint does not state a cause of action, for the reason that it does not appear therefrom that the negligence charged was the cause of the injury. It is not alleged that the failure to instruct, which is the only negligence alleged, caused or had anything to do with the injury." There is in the complaint, however, an allegation that the plaintiff was "without instruction as to said danger by reason of the negligence of the defendants." This court in *Pullen* v. *City of Butte,* 38 Mont. 194, 99 Pac. 290, 21 L. R. A., n. s., 42, said: "In *Smith* v. *Buttner,* 90 Cal. 95, 27 Pac. 29, the court, in considering the question now before us, said: 'It is well settled that negligence may be charged in general terms; that is, what was done being stated, it is sufficient to say it was negligently done, without stating the particular omission which renders the act negligent.' In other words, if the doing of certain acts, under certain circumstances, constitutes negligence, it is sufficient, after specifying the acts, to say that they were negligently done; or, if the failure to do certain acts constitutes negligence, then it is sufficient, after specifying the acts, to say that the defendant negligently failed to do them."

As was said by the court on the former appeal, and the remark may be applied to the allegations of the complaint as well as to the testimony: "The boy was obeying orders, and it was for the jury to determine whether the defendant was chargeable with want of ordinary care in not apprehending that he would probably attempt to do both acts at the same time and not instructing him accordingly." The complaint alleges that plaintiff was directed to use the hose; to turn water upon the clay and feel it as it emerged from the machine; that there was danger "in the operation aforesaid of watering and feeling said clay as the same emerged from the mill"; that the defendants knew of the need of instructions *as to said danger,* and it was their duty "to use

reasonable care to give him such instructions in regard to the performance of said duties as would have enabled him to sense and avoid said dangers, but that this they negligently and carelessly wholly failed to do''; that at the time of his injury he was feeling the clay with his right hand and wetting it by means of the hose held in his left hand, whereupon ''his left hand, then holding said hose,'' was *carried* forward against the knives. It will thus be seen that the case falls squarely within the rule laid down in *Pullen* v. *City of Butte, supra.* The complaint sets forth that the defendants were negligent in failing to do a certain act, *viz.,* to warn him of the danger connected with the performance of his duties in the manner in which he was directed to perform them. They were in duty bound to use ordinary care to furnish him a reasonably safe place in which to work and reasonably safe appliances. It is true that the complaint does not point out the particular warning required or the particular danger to be apprehended; but in the absence of a special demurrer for uncertainty, we think it sufficient to state a cause of action in this regard. In the *Pullen Case* no negligent act or omission of any kind was pleaded. We think it fairly deducible from the complaint that plaintiff's left hand was carried forward by the appliance furnished him for watering the clay, to-wit, a hose through which water was being forced under pressure, and that the instructions required were such as would have enabled him, if he heeded them, to avoid having his hand *carried* forward by the hose far enough to bring it in contact with the knives. The failure to give such instructions would furnish a proximate cause of the accident. We think it is also reasonably to be gathered from the allegations of the complaint that the defendants negligently failed to warn the plaintiff of the danger to be apprehended from the act of feeling the clay and watering it at the same time. An instruction as to the space to be maintained between the end of the nozzle and the clay might have assisted him in avoiding injury. It is constantly to be borne in mind that he was a boy with a boy's immature judgment, or lack of judgment. Perhaps the inquiry whether counsel, under the same circum-

stances, would have considered it necessary to warn his own boy in the manner we have suggested, will serve to illustrate the method of reasoning by which the jury may have arrived at the conclusion that ordinary care was not exercised in instructing this boy.

2. It is contended that the evidence is insufficient to sustain the verdict. The plaintiff testified as follows: "When I was hurt, I was throwing water on the clay and feeling whether it was moist enough or not. I was on my knees at the mouth of the machine, throwing water in. I was down about like this [indicating] with my hand up here with a piece of hose throwing water, and this hand catching the mud as it fell out, to see whether it was moist enough; down on my right knee here, with the left hand upon the machine, my right hand about a foot from the bottom of the tub, about center-ways from the hole through which the clay came, about six inches from the opening at the end of the tub, I should judge. My left hand was about six inches from the knives, toward myself, as I was leaning. I had the nozzle in my hand. It was made of brass. I could not say how long it was exactly; I should judge it would be about six or eight inches long. I was holding at the back end of the nozzle; I could not say how long before I was hurt. There was water coming from the hose at the time, going just inside the mouth of the tub. The water was regulated by a stem on the valve at the back end of it and the end of the nozzle was fastened to the hose. I was throwing water inside the machine and the pressure of the water suddenly forced them ahead and jerked my hand in the knives, and got them crushed."

In the former decision, in considering whether the court erred in excluding the evidence of witnesses who were prepared to testify that in the course of their experience they never heard of an accident happening as this one is alleged to have happened, this court said that the happening of the accident as narrated by the plaintiff was a wholly fortuitous event, the occurring of which in the exact manner told by the boy could not be anticipated. It is now said that the court held that the testimony was

insufficient to establish a liability against the brick company, and that the holding is the law of the case. Such, however, was not our understanding of the decision at the time, and is not now. We must not overlook the fact that the plaintiff testified that he was doing the work according to directions; that he was told to do it in the manner employed by him. If he was, and the jury evidently believed that he was, and if they further found, as they might, that the manner of doing the work was in itself dangerous and resulted to his injury, then defendants were chargeable with actual knowledge of the danger to be apprehended, and, as was said in the former opinion it became immaterial to inquire the exact cause of the injury, provided plaintiff did not contribute thereto, and the fact that the accelerated flow of water was a wholly fortuitous occurrence was also immaterial. This court held in effect, in *Hollingsworth* v. *Davis-Daly Estates Copper Co.*, 38 Mont. 143, 99 Pac. 142, that where a defendant had created a dangerous way, it was chargeable with actual knowledge of its dangerous condition. The same principle applies here. If the defendants directed this boy to do the work in a particular manner, and that manner was dangerous, they were chargeable with knowledge of the fact. And if he did his work according to directions and was injured by doing it in that way, no burden rested upon him to point out the particular danger as to which he should have been warned.

Again, it is contended that the evidence fails to show that the injury was caused by the negligence charged. The following cases are cited to sustain the contention: *Buckley* v. *Gutta-Percha & Rubber Mfg. Co.*, 113 N. Y. 540, 21 N. E. 717; *Fronk* v. *Evans City Steam Laundry*, 70 Neb. 75, 96 N. W. 1053; *Siddall* v. *Pacific Mills*, 162 Mass. 378, 38 N. E. 969; *Hickey* v. *Taaffe*, 105 N. Y. 26, 12 N. E. 286. In each of these cases the court was unable to determine that any warning which might have been given would have prevented the accident; while in the case at bar, as we have pointed out in considering the complaint, the jury could properly find that certain warnings might have been effective for that purpose.

It is suggested that the sudden pressure of water in the hose was the direct cause of the accident and that this was an independent intervening cause, operating between the alleged failure to instruct and the result to the boy. Mr. White, in his work on Personal Injuries on Railroads, volume 1, section 23; says: "If the alleged act of negligence would not have produced the injury but for the interposition of an independent cause, which could not have been reasonably anticipated, but which turned aside the natural sequence of events and produced the result, such negligent act is not the proximate cause of the injury and is not actionable. The intervening cause, in such case, is the only proximate cause." The case at bar, however, is not at all like those to which the learned author refers. The plaintiff was furnished by the defendants with a hose through which water was running under pressure. They were charged with the duty of using ordinary care to furnish a flow of water that was reasonably safe for the boy to handle. It may have been, and probably was, reasonably safe for an adult to use. Having furnished the water and the hose, they were chargeable with notice of how the water would flow in the hose. And aside from this consideration, it is matter of common knowledge that the pressure of water flowing in a hose will move the hose about from place to place, unless it is held stationary; the amount of movement being regulated by the pressure of the water. We all know, also, that when for any cause the pressure is reduced, the flow is lessened, and *vice versa.* The jury may well have charged the defendants with notice of these facts. While it is true that no complaint is made of failure to use ordinary care in furnishing the hose or the water, we think it cannot be said that the jury had no justification for finding that the defendants, having furnished this particular apparatus, were chargeable with notice that it might become dangerous in the hands of a boy thirteen years of age. In characterizing the accident, in the former opinion, as a wholly fortuitous event, a phrase adopted from appellants' brief, we meant no more than to say that its happening in the exact manner narrated was probably not to be anticipated.

That the entire situation was dangerous to a boy of plaintiff's age is proven by the testimony of Mr. Bonnett, the superintendent of the plant, who stated at the trial that he gave instructions to the plaintiff, which, if observed, would have prevented his injury. He said: "I told him to turn the water on the brick machine proper after the clay had left the pug-mill, when requested to do so. I simply told him to turn the hose in it. He could stand right there without getting down where the hose was. I gave him that instruction two or three times during the day. I instructed him when feeling the temper of the clay to feel of it on top. He was never told to go there and feel of the clay as it came out of the pug-mill before it went into the brick machine, *but to keep away from there.*" This testimony was in direct contradiction of that of the plaintiff, but it serves to show that the company's superintendent realized the necessity of warning him, and the particular instructions thought to have been necessary. The jury must have found that the warning to keep away from that portion of the machine where the plaintiff was injured was not given. If it had been and the boy had followed the warning, he could not have been injured, despite the wholly fortuitous circumstance that the pressure of the water suddenly forced the hose and nozzle ahead and "jerked" his hand.

Again, it is claimed that plaintiff was properly instructed by the superintendent, Bonnett. It is said that Bonnett's testimony is uncontradicted, but we cannot assent to this conclusion. Plaintiff testified, as we understand the record, that Bonnett told him to "catch the clay as it left the machine, after it had fallen out of the machine; catch it and feel it and see if it was moist enough or not." Bonnett testified as hereinbefore set forth, and he also said: "I instructed him how to do that work, and where to stand when doing it. I told him to stand about two-thirds back from the end and throw on a good bit on the clay, and sometimes he could reach the valve and stop the water and do a great deal more than take care of the water. There was no danger connected with the operation of the machine in that way, in the way I told him, if he carried out the instructions I gave him.

It was possible for him to throw water into the hopper without going to the front end of the machine, standing alongside of it. He would stand about four or five inches from the end of the machine and throw the water down. I don't know exactly how long it took me to instruct the young man. Off and on probably a day or two. He was doing very well. It was not necessary for the boy to go down on his hands and knees in doing this work at all. I was with him part of the time. I cannot say how much of the time, because someone would call me here, and I go there, and see how he was getting along, and then go up there and stand and watch him. I could not complain of the way he performed his duties there. I saw him do the work assigned to him. He was doing very well for the time he had been there. I don't remember seeing him do the work in any other way than I had pointed it out to him." We think the testimony is in substantial conflict.

While the witness C. P. Slater was on the stand he was asked this question on direct examination: "State whether or not in your judgment as a brickmaker, based upon your experience with this particular machine, it would be dangerous or otherwise for an inexperienced boy thirteen years of age, of ordinary intelligence, who had never worked with a machine of this kind before, and had no experience whatever with machinery, to be employed in tempering clay in a pug-mill of this character, watering the clay with a hose and feeling of it with his hands to determine the moisture?" The question was objected to, but not for the reason urged against it in this court. Under these circumstances, we cannot consider the specification of error. (*Smith* v. *City of Butte,* 40 Mont. 445, 107 Pac. 409; *Butte Northern Copper Co.* v. *Radmilovich,* 39 Mont. 157, 101 Pac. 1078; *Thornton-Thomas Mer. Co.* v. *Bretherton,* 32 Mont. 80, 80 Pac. 10.)

It is contended that the court erred in sustaining an objection to the following question propounded to the defendants' witness Bray, *viz.:* "Have you ever known or heard of an accident occurring in the manner testified to by the plaintiff in this case?" No

offer of proof was made, and we have no means of knowing what answer the witness would have made to the question at the second trial. (*State* v. *Byrd,* 41 Mont. 585, 111 Pac. 407; *Bean* v. *Missoula Lumber Co.,* 40 Mont. 31, 104 Pac. 869; *Tague* v. *John Caplice Co.,* 28 Mont. 51, 72 Pac. 297.)

Defendants' witness Page testified that at times the plaintiff did not pay strict attention to his work. He then testified, over objection: "He was making and throwing mud balls occasionally and throwing water with the nozzle once in a while toward the men. He threw mud balls about three times that day, possibly an hour or two before the accident." This testimony was afterward stricken out on the ground that no causal connection was shown between the act of throwing mud balls and the injury. We think the ruling was correct.

The court instructed the jury as follows: "Though the danger be obvious and such as an operator of ordinary intelligence and experience would perceive, yet when a child is put to work and his age and experience require it, the employer must see not only that he has notice of the danger, but also that he is sufficiently instructed as to the way in which he should do the work so as to avoid the danger. And the master cannot relieve himself of this duty by delegating it to either a foreman or to anyone else; but must himself see to it that it is in fact done. Nor can he assume that a boy of tender years is experienced with machinery. His age is a notice and requires the master to inquire as to the child's capacity and experience." It is contended that by this instruction the court told the jury that the master must personally warn and instruct the inexperienced servant. When the trial judge proposed to give the instruction which was offered by the plaintiff, it was objected to in its entirety, "for the reason that it imposes too great a burden upon the employer or master in regard to duty resting upon him to instruct or warn the minor." The objection may apply as well to the whole instruction as to that particular portion which is now subjected to criticism. Indeed, the phraseology seems to indicate that it was intended to apply to the portion relating to the master's general

duty to instruct, and not to that part wherein the court appears to say that the warnings must be delivered by the master personally. And again, the specific criticism now offered does not appear to have been advanced in the court below. The trial court must be given an opportunity to rule on the exact point presented to this court, before it can be put in error. (*Yergy* v. *Helena Light & Ry. Co.*, 39 Mont. 213, 102 Pac. 310.)

It is claimed that the verdict is so excessive as to evince passion and prejudice on the part of the jury. We do not think so. We are of opinion, however, that the verdict is excessive. In *Lewis* v. *Northern Pacific Ry. Co.*, 36 Mont. 207, 92 Pac. 469, this court refused to disturb a judgment for a like amount. In that case the plaintiff lost his left hand. This plaintiff, however, is far from being injured to that extent. He testified: "I went to the hospital and stayed there a little over a week. I suffered pain in my hand and to my shoulder. I went home from the hospital. It was about six weeks or maybe longer before my hand healed up. It pained me quite a bit. I could not sleep at all hardly. When it healed up, I found it was very weak. I could not stand much work. I didn't have the use of my fingers. The little finger and the next one to it were not available for use. I carry one finger bent, because it drawed that way when it healed up; can't straighten it out. I have the use of the first and second fingers and the thumb on this hand. Sometimes pain runs through it on the motion of it. Heat and cold bothers the whole hand. Cold hurts it quite a bit while it is getting warm; it hurts the fingers and through the hand; won't stand hardly any pressure at all. Haven't noticed any improvement in that respect in the lapse of time; bothers me sometimes. The pains extend up to the shoulder. My folks are farming now. About all I could do was to handle the hoe some; that bothered my hand quite a bit and made it sore. I have done some work with my father on the farm; hoeing is about the only thing I can do. I have done other work, small, light work."

Dr. Watkins testified: "The skin was torn back of the ring and little finger; the whole thing torn and laid backwards;

tendons severed and pretty well scraped nearly to the bone. There was some flesh torn from the palm of the hand; the torn part commenced back of the hollow of the hand about an inch and a half from the wrist, forward into the palm of the hand. The flap that is torn back in the hand is about two inches long. The tissues had been severed in making that flap nearly to the bone. The fingers were in normal shape at that time. There was a split between the little finger and the one next to it. The third finger assumes the position it does now from the contraction caused by the injury; it is of no use now. The fourth finger is impaired to a certain extent, not wholly. An injury of that kind would cause pain, cause severe pain, I should say. The length of time would depend on the individual. The condition of the hand is probably due to an injury to the tendons and sheath covering the joint. I treated the boy, I think, in the neighborhood of two months. He was told to come up whenever it was necessary. An injury of that kind after healing might leave resultant tenderness to pressure in the palm of the hand, and might render a peculiar susceptibleness to the influence of heat and cold.''

As every case must necessarily be decided in the light of its own facts, it would serve no useful purpose to encumber this opinion with a citation of authorities on the question of excessive verdicts. This plaintiff has suffered pain, and the usefulness of one—perhaps two—of his fingers is impaired. Whether the injury will permanently affect his ability to use the fingers, we do not know. We recall several cases in this court wherein medical men testified that time will minimize the effect of such an injury. The hurt received is apparently healed. No fingers are lost. We are of opinion that the sum of $4,000 will amply compensate the plaintiff; and, indeed, this sum is a large one under the circumstances.

The cause is remanded to the district court of Yellowstone county, with directions to grant a new trial, unless within thirty days after the *remittitur* is filed with the clerk of that court, the respondent shall file his written consent that the judgment

for damages may be reduced to $4,000. If such consent is given, the judgment shall be modified accordingly as of the date of its original entry, and together with the order denying a new trial, will stand affirmed. That part of the judgment relating to costs in the court below is not to be disturbed. Respondent to recover costs of appeal.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

