JEWETT, Respondent, *v.* GLEASON, Appellant.

(No. 7,604.)

(Submitted January 8, 1937. Decided February 8, 1937.)

[65 Pac. (2d) 3.]

64

*Messrs. R. H. Glover, S. B. Chase, Jr.,* and *John D. Stephenson,* for Appellant, submitted a brief; *Mr. Glover* argued the cause orally.

*Messrs. Church & Jardine,* for Respondent, submitted a brief; *Mr. Arthur S. Jardine* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Cascade county. Plaintiff, Adele Jewett, secured a judgment for $12,000 against defendant, A. L. Gleason, on account of in-

juries received in an automobile collision at the intersection of Second Avenue North and Ninth Street in the city of Great Falls. The accident occurred about 7:30 P. M. on the 21st day of December, 1933. Plaintiff was walking easterly across Ninth Street on the south sidewalk portion of Second Avenue. Defendant was driving his automobile in a westerly direction on Second Avenue, and turned to the left at the intersection. Plaintiff was struck as she was proceeding easterly on the crosswalk. She was knocked to the pavement and suffered personal injuries.

The contention of plaintiff, supported by the testimony of her witnesses, was to the effect that defendant in turning from Second Avenue into Ninth Street cut across the corner and struck her. It was the contention of defendant, and his witnesses so testified, that he proceeded to the center of the intersection and made the turn in accordance with the requirements of the city ordinances and at a lawful rate of speed, and that, from her position on the crosswalk, plaintiff without warning dodged backward into the path of the car and was thereby injured.

Plaintiff pleaded the applicable city ordinances, which provide, among other things, the limit of speed on the streets in that part of the city, the necessity for drivers to give pedestrians on crosswalks the right of way, the necessity of a driver intending to turn to the left at an intersection to proceed to the right of the center thereof before turning, the necessity for the sounding of the horn, and such other similar requirements. She alleged that defendant was guilty of eight separate and distinct acts of negligence in making the turn. The alleged acts were mainly violations of the ordinances mentioned.

Defendant in his answer admitted that the ordinances existed and that the collision occurred; he denied, however, that the collision or injuries were due to or caused by any negligence on his part. He pleaded contributory negligence on the part of plaintiff; this she denied by reply.

At the close of plaintiff's testimony, motion for a nonsuit was made and denied. Defendant's case was then presented. The verdict for $12,000 resulted. Motion for a new trial was also made and denied.

Seven specifications of error are asserted; four of them pertain to the refusal of offered instructions, and the remaining three relate to the extent and alleged excessiveness of the verdict and the judgment.

The first refused instruction was on the subject of unavoidable accident. We are of the opinion that no error was committed in refusing to give the instruction. The evidence did not indicate that there was an unavoidable accident, but rather indicated that the accident was due to the negligence of someone. "To bring a casualty within the legal meaning of the term 'accident,' an essential requirement is that the happening be one to which human fault does not contribute." (*Wilson* v. *Chattin*, 335 Mo. 375, 72 S. W. (2d) 1001; *Tanner* v. *Smith*, 97 Mont. 229, 33 Pac. (2d) 547, 550; *Sherman* v. *Ross*, (Colo.) 62 Pac. (2d) 1151.) In 10 Blashfield's Encyclopedia of Automobile Law & Practice (Permanent Edition), section 6698, p. 502, the following rule is stated: "Where the evidence shows that the accident was due to the fault and negligence of one or both of the parties the court should not instruct as to unavoidable accident." (See, also, *Avra* v. *Karshner*, 32 Ohio App. 492, 168 N. E. 237.)

Defendant offered an instruction to the effect that the mere happening of an accident in which plaintiff was injured did not of itself entitle her to recover. The rule of this court, as announced in *Tanner* v. *Smith*, supra, is as follows: "It is elementary that 'instructions must be viewed as a whole where error in giving and refusing certain of them is relied on for a reversal of the judgment.'" Many authorities were there cited in support of that rule. An examination of the voluminous instructions given by the court makes it very apparent that the substance of the law contained in the offered instruction was contained in other instructions, and that therefore the instruction was properly refused.

Another instruction offered and refused had to do with circumstantial evidence, and, if given, would have advised the jury that a verdict could only be predicated upon substantial evidence, direct or circumstantial, and not alone upon conjecture, however shrewd, nor upon suspicion, however well grounded. The evidence presented in the record is not in agreement, but we fail to see that there was much left to conjecture or suspicion. It was really a question of which of the witnesses were worthy of belief. This matter was covered by the general instructions very fully. The reasons just given apply with equal force to defendant's requested instruction No. 21, which likewise referred to circumstantial evidence coupled with negligence.

Although the offered instructions stated sound law in the abstract and would be proper in some cases, they were either covered by the instructions given, or inapplicable and improper under the facts in this case.

The most serious assignment of error is that which relates to the size of the verdict and the judgment, and is to the effect that it is excessive and so far out of proportion to the injuries suffered as to indicate that it was given under the influence of passion and prejudice. The question thus tendered must be considered in the light of the general principle that in this type of cases there is no measuring stick by which to determine the amount of damages other than the intelligence of the jury. (*Fulton* v. *Chouteau County Farmers' Co.*, 98 Mont. 48, 37 Pac. (2d) 1025, and cases cited.)

Applicable rules with relation to this matter have been often stated by this court and by many other courts. The proposition has always been a puzzling one for courts to solve. In the case of *Ashley* v. *Safeway Stores, Inc.*, 100 Mont. 312, 47 Pac. (2d) 53, 62, the rule in this jurisdiction was restated in the following language: "It is a well-established rule of this court, and of courts generally, that the amount of damages to be paid for personal injury is peculiarly within the province of juries, and that such findings are final and conclusive unless

the results are such as to shock the conscience and understanding of a court. It is always difficult to decide just when and under what circumstances that kind of condition exists. We do not deem it our prerogative to substitute our judgment for the judgment of a jury in the ascertainment of damages where the finding is based upon conflicting evidence. The rule in such a situation is no different from that obtaining in all controverted fact issues properly submitted to juries. It is not a question of the amount this court would have awarded under the circumstances. It is not the amount which in our opinion would compensate the injured party; rather it is a question of what amount of damages will the record in the case support when viewed, as it must be, in the light most favorable to the plaintiff. It is when the testimony—the facts of the case—fails to support and justify a verdict and judgment that the conscience and understanding of the court are shocked. Such a result must of necessity be shocking when it is understood as fundamental that solemn judgments of courts must be predicated upon definite and tangible supporting facts.

"We believe it is our duty to leave undisturbed and to affirm any judgment, regardless of size or extent, that has reasonable support in the evidence, even though the evidence is conflicting and controverted. It is not our province to resolve such controversies; that problem is for the jury. But, where the amount of damages awarded cannot be reconciled with a conscientious interpretation of evidence or a rational understanding of the facts as a whole, the court may then say that its conscience and understanding are shocked."

In the *Ashley Case,* supra, the verdict was approved in part and condemned in part. The decision was based upon the precedent established by the following cases wherein verdicts and judgments were ordered scaled down as an alternative for a new trial: *Kennon* v. *Gilmer,* 5 Mont. 257, 5 Pac. 847, 51 Am. Rep. 45; *Forquer* v. *North,* 42 Mont. 272, 112 Pac. 439; *Wise* v. *Stagg,* 94 Mont. 321, 22 Pac. (2d) 308; *Tanner* v. *Smith,* 97 Mont. 229, 33 Pac. (2d) 547.

Many judgments alleged to have been excessive on the grounds mentioned have been sustained by this court. Some of them have seemed excessive; but an examination of the opinions will disclose that in each instance resort was had to a consideration of the particular facts of the case, and that by reason of such facts it was held that the verdicts and the judgments were sufficiently sustained. Compare the following cases: *Staff* v. *Montana Petroleum Co.*, 88 Mont. 145, 291 Pac. 1042; *McNair* v. *Berger*, 92 Mont. 441, 15 Pac. (2d) 834; *Fulton* v. *Chouteau County Farmers' Co.*, supra; *McCartan* v. *Park Butte Theater Co.*, 103 Mont. 342, 62 Pac. (2d) 338, and authorities therein cited.

Here, plaintiff was a married woman 48 or 49 years of age. Her principal occupation was that of housewife. She testified that she had been engaged as a saleswoman in her spare time for a period of about twelve years prior to her injuries; she sold cosmetics and similar merchandise from house to house. She classified herself as a ''specialty saleswoman,'' but further said, ''I carried on my household duties and then did what selling I could outside of that.'' She estimated her annual earnings for the period of four years before her injuries at about $1,500. She also testified that she was possessed of talent as a singer, and had earned something by singing over the radio and at entertainments. The record shows that these earnings had probably averaged in the neighborhood of $100 per year for the years immediately preceding her injury. It will be observed that she had no established business or employment in either line of work, but merely carried on in the special enterprises in a manner incidental to her household duties. Before the accident she was a normally strong and healthy woman, and was able to walk long distances in the course of her several duties.

The evidence discloses that plaintiff sustained the following injuries: A cut, bruised, and sprained ankle; a fracture of the left clavicle, or collar-bone, which her doctor testified had healed up; black and blue bruises on the left side of the back;

a ruptured varicose vein in her right leg; some teeth and bridgework loosened and broken out; and a fracture of the upper and outer surface of the left tibia, or knee. The last-mentioned injury was by far the most serious.

There was only one medical witness, the doctor who attended the plaintiff. His evidence was not contradicted. It is not necessary to repeat all that he said. He classified the fracture as a ''compression fracture.'' He said that it amounted to a lowering or depression upon the outer surface of the left tibia, or bone in the left knee, and that it was disabling and would probably continue to be so for the rest of her life. He appraised this disability at about 50 per cent. so far as the usefulness of the knee was concerned, and said that she had an external lateral motion in the knee joint which was noticeable when she walked, and that, although in all probability she would ultimately be able to get along without a cane, she might have to use one for some time. He testified: ''I think that after a certain length of time she would get so adapted to the condition that probably she could get along without a cane. She will be able to walk but she will tire easily in that knee joint because the articular surfaces are not protected and she will have some disadvantage in walking.'' He also testified that the other injuries had left no permanent disability; that the patient had no permanent symptoms of other injuries except that she was nervous; and that he would hardly term that as anything disabling.

Plaintiff was taken to a hospital immediately after the accident. There she was given treatment and remained for fifteen days. She thereafter returned to her home for a period of five or six days, and then returned to another hospital for thirty-four days. From there she again went home, where, she testified, she was confined to her bed from four to six weeks. She also testified that when she got up and around it was necessary for safety's sake to use crutches for seven or eight months, and that after that she got along with a cane. Plaintiff testified that since her partial recovery she was in a

nervous condition; that she was unable to work at her household duties in a satisfactory manner; that she was entirely unable to proceed with her selling activities or her singing; and that thereby her earning capacity was practically destroyed. She is the mother of six children, three of them of age, and the other three younger. At the trial it was stipulated that the medical bill was $211, the hospital bill $317, and the incidental expenses $15.25.

A careful study of the record in this case convinces us that the case falls into the first-mentioned class of cases wherein the evidence was not sufficient to support the verdict. The evidence here is insufficient to support a verdict of $12,000. There is, however, evidence in the record which in our opinion is sufficient to support a judgment for $8,000, but no more. The expenses admitted as reasonable in the premises amount to $543.85. An allowance of $8,000 leaving a net of over $7,400 is all that the evidence in the case will support.

The cause is remanded to the district court, with directions to grant a new trial, unless within ten days after notice of the filing of the remittitur with the clerk of the court the plaintiff shall file her written consent that the judgment for damages may be reduced to $8,000. If such consent is given, the judgment shall be modified accordingly as of the date of its original entry, and, as modified, shall be affirmed. If plaintiff does not consent to such reduction of damages, the court is directed to grant a new trial. In case reduction is accepted by plaintiff, each party shall pay his or her costs on the appeal.

ASSOCIATE JUSTICES ANDERSON and MORRIS concur.

MR. JUSTICE ANGSTMAN, Concurring in Part and Dissenting in Part:

I agree with most of the foregoing opinion, but I am unable to agree that the verdict of the jury is excessive, as a matter of law. In speaking of the fractured tibia, the doctor who treated the plaintiff—the only doctor who testified in the

case—said that it was a compression fracture. He further testified: "It is a disabling fracture, and I think that she will have a disabling fracture of the knee joint the same as she has at present. I figure that that condition will continue throughout the rest of her life."

These facts, the injuries, and loss of earnings referred to in the majority opinion, and the consequent pain and suffering, were sufficient, I believe, to warrant the verdict ,and to deter us from substituting our judgment for that of the jury, particularly since the verdict met with the approval of the trial court by denial of the motion for new trial challenging its reasonableness. (*McNair* v. *Berger,* 92 Mont. 441, 15 Pac. (2d) 834.)

The judgment, I think, should be affirmed in its entirety.

MR. CHIEF JUSTICE SANDS, Dissenting:

The majority opinion finds no error in the trial proceedings. It approves the verdict in all except the amount. The Constitution constitutes the jury the determinator of the facts—the amount of damages is one of the important facts intrusted to the judgment of the jury. No extrinsic circumstances are made to appear why the judgment of the jury, with the approval of the district judge, should be set aside and the verdict of this court substituted. No claim is made that the jury rendered their verdict under the influence of passion or prejudice. I can discover no authority whereby this court can set aside the Constitution and substitute its verdict for that of the properly constituted jury. I therefore dissent.

Rehearing denied February 26, 1937.