WILLIAM F. SHEEHAN, Plaintiff and Respondent, *v.* E. A. DeWITT, Defendant and Appellant.

No. 11178.
Submitted June 20, 1967. Decided July 28, 1967.
Supplemental order August 31, 1967.
430 P.2d 652.

Skelton & Hendricks, Missoula, Robert R. Skelton( argued), Missoula, for appellant.

Wade Dahood (argued), Anaconda, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict. The plaintiff brought the action to recover damages for an assault upon him by defendant. The verdict and judgment

were $1,500 as compensatory damages and $5,000 as exemplary damages.

Plaintiff is the county attorney of Granite County. In his capacity as county attorney he had been informed by one Bailey that defendant, appellant E. A. DeWitt, here, had taken some of his, Bailey's cattle and refused to give them to him. Plaintiff wrote a letter requesting defendant to come to his office to discuss the situation; the defendant went to plaintiff's office and the following account of the assault was related by plaintiff:

"* * * I extended my hand and shook hands with him, and I informed him who I was, and told him that my name is William Sheehan, and I was the county attorney, and I thanked him for coming in. He sat down at one side of the desk, and I sat down on the other side of the desk, and I think I should tell you that it is a different desk than we have there now, as it was a very narrow desk at that time, and since then we have a much wider one. Well, then we visited for a moment or two about maybe the weather or something like that, and he announced to me that he had been an attorney at one time, and practiced, if I remember right, in Oregon, and I again stepped up from my chair and extended my hand and shook hands with him, and I congratulated him, and said to him that we shouldn't have very much trouble over this thing then, because I said to him that he would know and understand why I wanted to talk to him, and everything was very agreeable. So then I proceeded to tell him, with details, about what this situation was that I have just explained to you, and I noticed that he was becoming a little angry, and I made it very clear to him that I was not accusing him, but all that I had asked him up there for was to see, because I have been in this game a while, and I wanted to know what both sides of the thing was, and what the explanation might be, and I asked him to please wait until I had finished, and then he could tell me actually what happened, and so I went on then and explained some

more of the details of this contract, and as I remember it, twice I asked him to wait, as he broke in and wanted to talk, and I asked him to wait until I had finished, and I could see that he was getting a little upset, and then I got down to the end of it, and I said that Mr. Bailey had accused him of stealing his cattle, and right then he said, 'You are a God-damn liar,' and he hit me in the face, and it was just so quick that I didn't realize that a man that old could do it. So I reached for the telephone, realizing that he was an old man, to call Nick to come and get him, and I did say then, 'You are going to be arrested,' in no uncertain terms, and, as fast as that, he grabbed the telephone out of my hand, and I stepped around my desk and passed him to the door, and I will admit that I was really angry by this time, and I said, 'Now, you get out of here,' and I held the door open, and he really moved out. Now, that is the story."

The injury was described by the plaintiff as follows:

"Q. Where were you struck? A. In the chin. * * *

"Q. Was it a hard blow? A. Yes.

"Q. Did it cause pain? A. Yes.

"Q. Did it cause any bleeding? A. Yes.

"Q. And what did you do? A. I walked out in the hall from my office—from my outer office, and my secretary was out, and I walked out in the hallway, and my secretary and the clerk of court were walking up the stairs, and I—well, it is hard to remember exactly the words that I said, but I was really upset by the whole affair, and was kind of numbed by it, and one of the women suggested to me that I had better get my handkerchief because your face is bleeding, and I proceeded to wipe it off, and then is when I began to realize what had happened, and immediately I tried to see where he had gone because I wanted him picked up, and when I couldn't see him outside of the courthouse, why then I proceeded to Dr. Cunningham's office for an examination, to see if anything had actually hurt my jaw or anything like that.

"Q. You went to see Dr. Cunningham? A. Yes.

"Q. And it turned out to be not serious? A. That's right.

"Q. And the doctor attended to you briefly and then released you? A. That's right.

"Q. And then what did you do, Mr. Sheehan? A. Well—

"Q. Did you come back to your office at all, Bill, do you recall? A. I don't exactly remember that, but I remember that I was tremendously upset, and it seems to me like I went home."

As to the injury previously described by quoting plaintiff's testimony, Dr. Cunningham was called by plaintiff and testified that upon examination there were contusions of the lower lip and that *no treatment was necessary*.

The appellant sets forth four issues for review, but as we view the case, only one issue need be reviewed to determine the case; that one is that the jury verdict was excessive.

The only evidence concerning damages is that previously set forth. Not even a doctor bill was put into evidence. Plaintiff could not even remember whether he went home or came back to the office. The doctor who examined him said no treatment was necessary and that it was not serious. On this minimal showing a verdict of $1,500 for compensatory damages was returned. It seems that just such a simple recitation as this answers the issue that damages awarded were excessive.

Plaintiff, respondent here, seemingly recognizes the lack of proof of damages because in this brief he goes on to relate that because of defendant's bragging around the county about slapping the county attorney that the county attorney "did suffer from the humiliation and mocking of the citizens in the community because it was quite a joke for several months." Perhaps this is so, but if it is, it simply was not proven or even mentioned. Plaintiff goes further in his brief to recite that $5,000 as compensatory damages had been prayed for in the complaint, and the jury had reduced this to $1,500.00, and that

somehow this bolsters the proof of the amount of damages. The logic of this reasoning escapes us!

Keeping in mind the only proof of damages, we shall call it minimal, though a poke in the chin by an assailant who he described as being "just so quick that I didn't realize that a man that old could do it" may be more serious than minimal. The defendant described himself, and it was not challenged as, "Well, I am all crippled up, but I done the best I could—my hands is all crippled up with arthritis * * *."

Our attempts to describe the injury, and thus the only measure of damages proven here (lacking as the proof did, medical proof, loss of earning, any substantial pain or impairment, or even inconvenience) is made in an effort to achieve some sort of yardstick to gauge whether the verdict was excessive.

A discussion of damages generally by Federal District Judge William J. Jameson in a reported opinion in Chavez v. United States, 192 F.Supp. 263, 270 (D.C.1961) is pertinent here. In that case the injuries being discussed were a displaced fracture of the middle third of the left femur, lacerations on his shoulder and back which left scars, ten days hospitalization, traction, intramedullary nails, crutches for five months, further hospitalization for removing the nail from his leg and considerable pain and discomfort. There Judge Jameson stated:

"Under the Montana law the measure of damages 'is the amount which will compensate for all the detriment proximately caused' by the accident, 'whether it could have been anticipated or not.' Section 17-401, R.C.M.1947. In personal injury actions there is no measuring stick by which to determine the amount of damages to be awarded and each case must depend upon its peculiar facts. Pfau v. Stokke, 1940, 110 Mont. 471, 103 P.2d 673, 674; Jewett v. Gleason, 1937, 104 Mont. 63, 65 P.2d 3; Wilson v. Northland Greyhound Lines,

D.C.Mont.1958, 166 F.Supp. 667; 1938, 15 Am.Jur. 480, Damages § 71.

"Aside from the medical and hospital expenses totaling $849.30, there is no accurate measurement for the recovery of damages for the personal injury sustained by Darryl. An allowance may be made for mental and physical pain and suffering. Bourke v. Butte Electric & Power Co., 1905, 33 Mont. 267, 83 P. 470.

"In my opinion $1,250 in addition to the medical and hospital expenses of $849.30 and loss of motor bike in the sum of $189 or a total of $2,288.30 will fairly compensate Darryl Sorenson and his parents for the injury sustained and the expenses incurred. It is understood that this sum will cover both the child's cause of action pursuant to Section 93-2805, R.C.M. 1947, and the parents' cause of action, pursuant to Section 93-2809."

Our quotation here is not meant as an approval or disapproval of the amount, but besides accurately stating the law as far as it was involved there, the quotation does suggest that some measuring device beyond just any amount is applicable, and further that by comparison to the injuries in the Chavez case, the injuries here are indeed minimal.

The punch in the chin did create some damage, but what amount was proven? We also point out that we are not herein concerned about exemplary damages at this point.

In Tanner v. Smith, 97 Mont. 229, 241, 33 P.2d 547, 552, this court observed:

"This court has consistently adhered to the rule that 'it is peculiarly within the province of juries to fix the amount of compensation to be paid for personal injuries, unless the result of their deliberation is such as to shock the conscience and understanding of the court.' Wise v. Stagg, [94 Mont. 321, 22 P.2d 308,] supra; Kelley v. John R. Dailey Co., 56 Mont. 63, 181 P. 326; Staff v. Montana Petroleum Co., 88 Mont. 145, 291 P. 1042. But this court, in common with courts

generally, has not hesitated to scale judgments in cases where the amount has been so great as to shock the conscience and understanding of the court. See Allen v. Bear Creek Coal Co., 43 Mont. 269, 115 P. 673; Forquer v. North, 42 Mont. 272, 112 P. 439; Wise v. Stagg, supra.

"In this case at bar we are impressed by the claim that the award of the jury was so excessive as to effect the above result."

In Jewett v. Gleason, 104 Mont. 63, 70, 71, 65 P.2d 3, 4, the same issue was discussed as follows:

"The most serious assignment of error is that which relates to the size of the verdict and the judgment, and is to the effect that it is excessive and so far out of proportion to the injuries suffered as to indicate that it was given under the influence of passion and prejudice. The question thus tendered must be considered in the light of the general principle that in this type of case there is no measuring stick by which to determine the amount of damages other than the intelligence of the jury. Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.2d 1025, and cases cited.

"Applicable rules with relation to this matter have been often stated by this court and many other courts. The proposition has always been a puzzling one for courts to solve. In the case of Ashley v. Safeway Stores, Inc., 100 Mont. 312, 47 P.2d 53, 62, the rule in this jurisdiction was restated in the following language: 'It is a well-established rule of this court, and of courts generally, that the amount of damages to be paid for personal injury is peculiarly within the province of juries, and that such findings are final and conclusive unless the results are such as to shock the conscience and understanding of a court. It is always difficult to decide just when and under what circumstances that kind of condition exists. We do not deem it our prerogative to substitute our judgment for the judgment of a jury in the ascertainment of damages where the finding is based upon conflicting evidence. The rule in

such a situation is no different from that obtaining in all controverted fact issues properly submitted to juries. It is not a question of the amount this court would have awarded under the circumstances. It is not the amount which in our opinion would compensate the injured party; rather it is a question of what amount of damages will the record in the case support when viewed, as it must be, in the light most favorable to the plaintiff. It is when the testimony—the facts of the case—fails to support and justify a verdict and judgment that the conscience and understanding of the court are shocked. Such a result must of necessity be shocking when it is understood as fundamental that solemn judgments of courts must be predicated upon definite and tangible supporting facts.

" 'We believe it is our duty to leave undisturbed and to affirm any judgment, regardless of size or extent, that has reasonable support in the evidence, even though the evidence is conflicting and controverted. It is not our province to resolve such controversies; that problem is for the jury. But, where the amount of damages awarded cannot be reconciled with a conscientious interpretation of evidence or a rational understanding of the facts as a whole, the court may then say that its conscience and understanding are shocked.'

"In the Ashley case, supra, the verdict was approved in part and condemned in part. The decision was based upon the precedent established by the following cases wherein verdicts and judgments were ordered scaled down as an alternative for a new trial; Kennon v. Gilmer, 5 Mont. 257, 5 P. 847, 51 Am. Rep. 45; Forquer v. North, 42 Mont. 272, 112 P. 439; Wise v. Stagg, 94 Mont. 321, 22 P.2d 308; Tanner v. Smith, 97 Mont. 229, 33 P.2d 547.

"Many judgments alleged to have been excessive on the grounds mentioned have been sustained by this court. Some of them have seemed excessive; but an examination of the opinions will disclose that in each instance resort was had to a consideration of the particular facts of the case, and that by

reason of such facts it was held that the verdicts and the judgments were sufficiently sustained. Compare the following cases: Staff v. Montana Petroleum Co., 88 Mont. 145, 291 P. 1042; McNair v. Berger, 92 Mont. 441, 15 P.2d 834; Fulton v. Chouteau County Farmers' Co., supra; McCartan v. Park Butte Theater Co., 103 Mont. 342, 62 P.2d 338, and authorities therein cited."

Now then, with these views in mind, $1,500 compensatory damages for such minimal proof of damages is shocking. We would be inclined to scale it down except for the fact that an additional $5,000 exemplary damages were allowed. We have not separately discussed the exemplary damage feature, but it too would seem to be out of line.

 It is clear that, where an assault is malicious, punitive damages may be awarded. (Hageman v. Arnold, 79 Mont. 91, 254 P. 1070). The question of malice is generally for the jury. (Vaughn v. Mesch, 107 Mont. 498, 87 P.2d 177). Malice is defined by statute. (R.C.M.1947, § 19-103, subd. 18.)

 We observe that we, members of the Supreme Court, are also public officials, and have been county attorneys. We take a dim view of anyone assaulting public officers doing their legal duty. Nevertheless, considering that the proof of actual damages was minimal, that the plaintiff's own description of the assailant could not be interpreted as one describing much of an assaulting force, the further fact that criminal remedies were available and were used in an attempt to achieve punishment or for sake of example, we feel that $5,000 exemplary damages are not consistent with a conscientious attempt at fairness.

In an effort to end the litigation, and admittedly with no yardstick, we scale the judgment down to $100.00 as compensatory damages and $500.00 as and for exemplary damages. If this scaled down judgment be accepted by plaintiff within ten days after remittitur the judgment as so modified is affirmed. If such scaled down judgment be not accepted the

judgment is reversed as to damages alone, affirmed as to liability, and remanded for trial on the issue of damages alone in conformity with our discussion hereinbefore. It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and JOHN CONWAY HARRISON concur.

### SUPPLEMENTAL ORDER

PER CURIAM:

Upon Motion to Disallow and Strike the Bill of Costs by the Plaintiff and Respondent.

IT IS ORDERED that such motion be granted.

DATED this 31st day of August, 1967.