HIMMELBAUER, APPELLANT, *v.* UNION BANK & TRUST CO. ET AL., RESPONDENTS.

(No. 5,227.)

(Submitted May 31, 1923. Decided June 25, 1923.)

[220 Pac. 84.]

*Attachment — Conversion — Forcible Entry — Sheriffs—Actual and Exemplary Damages—Instructions.*

Attachment—Household Goods in Dwelling-house—Unwarranted Multiplication of Keepers.

1. Where levy of an attachment on household goods is made in a dwelling-house, the placing of three or four keepers in charge for a period of eighteen days to the discomfort of the occupants without any apparent reason merits severe condemnation.

Same—Entry of Dwelling-house—When Lawful.

2. In an action for conversion of household goods and for unlawful and forcible entry of a dwelling-house by an officer charged with the duty of levying an attachment, where entry was made not only without force, but by permission of a constable who had possession under a previous writ of attachment, in the absence of the owner, an instruction that defendant officer had the right to enter and seize the property under the writ was proper. (See also opinion on rehearing.)

Trial—Instructions—Statement of Pleadings—Refusal not Error.

3. While the practice of giving instructions stating the issues as defined by the pleadings is commendable, failure to do so is not error.

Attachment—Conversion—Forcible Entry—Actual and Exemplary Damages—Erroneous Instruction.

4. *Held,* in an action to recover actual damages for the conversion of household goods, and exemplary damages for the unlawful and forcible entry of a dwelling-house by an officer under a writ of attachment, that an instruction that so far as actual damages were concerned plaintiff could recover only in case it was shown that the property was exempt, that she made demand therefor and that the officer acted in a malicious and wanton manner was error, in that demand had been admitted by defendant, the cause of action under which exemplary damages were asked was not based on the theory that the property was exempt and reference to wanton and malicious conduct of the officer in making the attachment could only apply to exemplary and not actual damages.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

[68 Mont. 34.]

ACTION by Mabel Himmelbauer against the United Bank and Trust Company and Ed. J. Majors, Sheriff. Judgment for defendants and plaintiff appeals. Reversed and Remanded.

*Mr. F. W. Mettler,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Day & Mapes,* for Respondents, submitted a brief; *Mr. E. C. Day,* argued the cause orally.

HONORABLE A. C. SPENCER, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, delivered the opinion of the court.

Plaintiff commenced this suit against defendants, alleging in her complaint two causes of action, the first for a conversion of certain personal property and seeking recovery of its reasonable value, the second claiming damages for the wrongful, unlawful and forcible entry of her home by the defendants and their wrongful and continuous occupancy after such entry. The record discloses the facts to be substantially as follows: In February, 1918, Antone Himmelbauer left the state of Montana, his wife, Mabel Himmelbauer, plaintiff and appellant herein, remaining and living at No. 622 Harrison Avenue, Helena, Montana, with her mother until early in March of the same year, when plaintiff and her mother, Mrs. Cloutier, left for Portland, Oregon. For a long time prior to the departure of the plaintiff and her husband they had lived and made their home at this same residence in Helena. Upon April 1, 1918, the defendant Union Bank & Trust Company caused a writ of attachment to issue out of the district court of the first judicial district for Lewis and Clark county, in an action wherein this plaintiff and her husband were defendants and the Union Bank and Trust Company was plaintiff, and on that day the sheriff of Lewis and Clark county, at the instance of the plaintiff bank, entered the house at 622 Harrison Avenue, in Helena, and levied upon and took possession of certain household fur-

nishings and personal property situated therein, made an inventory thereof and placed a custodian in charge. All of this was done during the absence of this plaintiff and her husband.

The evidence shows that on April 1 the sheriff, accompanied by Joseph Chivers, representing the bank, on their way to make the levy met Charles Hageman, a constable, on Harrison Avenue, who accompanied them to the house. Hageman produced a key, unlocked the door and thus was the entrance made. The record does not disclose any previous arrangement between the sheriff and Hageman for their meeting and entrance, nor is it explained in the record what key Hageman used to effect the entrance nor by what means he obtained the key. He got the key from his pocket. Hageman told the sheriff he had attached that property the day before. Plaintiff and her mother returned subsequently and found a keeper in charge of the property. Various keepers and custodians were placed in possession, all of whom retained its possession at the place where attached until April 19, 1918, when Mrs. Cloutier, the mother of plaintiff, was by agreement of all parties made custodian, she remaining as such until the property was removed from the house on May 18 following. During all the time between the levy on April 1 and Mrs. Cloutier's assumption of her duties as custodian on April 19, the various keepers in charge slept and remained in the house, one room upstairs being used for their bedroom. The plaintiff and her mother had access to all parts of the house at all times, were admitted to and departed therefrom without interference from the keepers and were treated with courtesy and respect. It appears from the record that Mr. Anderson, a keeper for a portion of the time, upon at least one occasion became obnoxious by apparently attempting to "tip-toe" to a point where he could hear conversations between plaintiff and her mother and others who came to the house for consultation with this plaintiff. The property and furniture in the house were not disarranged except that one chair had been moved by the keeper from the dining-room to the kitchen, where the custodian maintained a

fire and spent a large portion of his time, and the bedroom used by him was not well cared for.

Within the time from the levy until removal of the property Mrs. Cloutier served affidavit of ownership of a part of the property upon the sheriff and demanded its return to her, as did also Mrs. Moriarity, a resident of San Diego, California, and this plaintiff, assuming to act under an assignment to her of her husband's right to claim the property as exempt, made and served upon the sheriff an affidavit of ownership of the property in controversy, claiming it exempt and demanding its return. All of Mrs. Moriarity's property was returned to her and likewise all but a small portion of that claimed by Mrs. Cloutier. The plaintiff's demand was refused. Trial resulted in verdict and judgment for defendants upon both causes of action. Appeal is from the judgment.

Numerous errors are assigned by appellant, but we think none merit serious consideration, save and except Instruction No. 5 [1] proposed and given by the court. Before passing to a discussion of it, however, we think a condition fairly appears from the record worthy of passing observation. The record is entirely devoid of any facts or circumstances to justify some three or four different keepers remaining in the house at 622 Harrison Avenue, where their presence under the most favorable circumstances would be embarrassing to two ladies, for a period of eighteen days. All were strangers to plaintiff and her mother, their presence in the kitchen and elsewhere about the house at various times of the day and night apparently wholly uncalled for, and why such an unusual length of time was consumed in making inventory and preparing the property for removal and actually removing it is not shown by the record, is inexplicable and warrants severe condemnation.

At the close of all the evidence the plaintiff proposed ten instructions, all of which were refused save one. The defendants offered four which were all refused, the court instructing the jury in writing in accordance with its views of the law applicable to the facts of the case. Instruction No. 5, given

[2]  by the court, is as follows: "You are further instructed
that as a matter of law, under the facts of this case, the de-
fendants had the right to enter the premises in question and to
seize said property under the writ of attachment and to leave
such goods in the house but only so long as it was reasonably
necessary under the circumstances to pack up and prepare the
same for removal and to remove the same, unless the removal
of said goods from said house was prevented by the act of the
plaintiff, Mabel Himmelbauer, or her husband Antone Himmel-
bauer, or their agents, or unless they gave consent to the goods
remaining there."

There is no conflict in the evidence as to the manner in which
the entrance and levy were made.    Hageman was in possession
of the house at 622 Harrison Avenue on April 1.    He was a
constable and stated that he had attached the property the day
before.    He admitted the sheriff who thereupon made the levy.
Under that state of facts we think Instruction No. 5 not erro-
neous.    While the general doctrine that a man's home is his
castle, where an officer may not enter against the consent of
the owner for the service of civil process, is well established
(*Ilsely* v. *Nichols*, 12 Pick. (Mass.) 270, 22 Am. Dec. 425), the
rule cannot apply under all circumstances.    The design of the
law is the preservation of the sanctity of the home, rather than
the protection of the property therein (*Ilsley* v. *Nichols, supra*),
and hence the rule should not be applied under all circum-
stances as that it might become an instrument to defeat the
ends of justice.    If the entry of a dwelling-house is made with-
out force, peaceably and even permissibly, an officer may pro-
ceed to levy upon goods in the house.    (6 C. J. 219; 4 Cyc.
581; *Hitchcock* v. *Holmes*, 43 Conn. 528.)    The writ com-
manded the sheriff to attach the property of defendants.    The
statute requires that the officer shall seize and take possession
of the property in making his levy (Rev. Codes, secs. 9260,
9262), and hence, having gained a peaceable entrance, he was
but pursuing the plain requirement of the law in making the
levy and seizing the property.    In substance, the instruction

[68 Mont. 34.]

complained of so told the jury and was a correct statement of the law as applied to the facts of this case.

Appellant assigns as error the refusal of the court to give his offered Instruction No. 1, being a statement of the issue as [3] defined in the pleadings. While the practice of giving such statement to the jury is commended (*Paxton* v. *Woodward,* 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 215; *Rand* v. *Butte Electric Ry. Co.,* 40 Mont. 398, 107 Pac. 87; *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70), error cannot be predicated upon its failure so to do.

Other assignments of error are without merit and require no further consideration.

We think the jury was fully and fairly instructed upon all matters of law applicable to the case and that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.

---

ON REHEARING.

(Resubmitted September 20, 1923.    Decided October 19, 1923.)

HONORABLE A. C. SPENCER, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, delivered the opinion of the court.

More mature consideration after a rehearing has disclosed that error upon the part of the trial court prejudicial to the rights of appellant was committed in giving Instruction No. 11. Sufficient statement of the facts appears in the former opinion, and we think that decision correct in material particulars, save and except so much thereof as fails to disapprove of Instruction No. 11.

Appellant urges all specifications of error made upon the original hearing, but lays particular stress upon the giving of Instructions Nos. 5 and 11, and only these require con-

sideration. As the order of this court heretofore made must be overruled and a new trial granted, attention should be called to the record to show why No. 5 has our approval. Instruction No. 5 reads as follows: "You are further instructed that as a matter of law, under the facts of this case, the defendants had the right to enter the premises in question and to seize said property under the writ of attachment and to leave such goods in the house but only so long as it was reasonably necessary under the circumstances to pack up and prepare the same for removal and to remove the same, unless the removal of said goods from said house was prevented by the act of the plaintiff, Mabel Himmelbauer or her husband, Antone Himmelbauer, or their agents, or unless they gave consent to the goods remaining there."

The record fails to disclose in what manner the constable effected his first entrance into the house in question; fails to show how or from whom he obtained the key with which he later admitted the sheriff; fails to show whether he admitted the sheriff pursuant to previous arrangement or in consequence of a request after a casual meeting; and fails to impart any information as to what was the result of the attachment which the testimony showed he levied the day prior to the levy by the sheriff.

On April 1, 1918, the house at 622 Harrison Avenue was in the apparent possession of Hageman, who produced the key and allowed the sheriff to enter. No circumstances appear in the record to arouse the suspicion, much less to justify the belief by the sheriff, that such possession was not rightful, nor do we think the record discloses any facts which would require the sheriff before making his levy to make further investigation after his entry was made without force, peaceably and even by permission of one not only in apparent but actual possession. Neither Hageman nor the deputy sheriff were produced as witnesses to explain the circumstances attending the entrance of either officer, and while another trial of this case may disclose circumstances such as to make Instruction No. 5 wholly inapplicable, we think it not erroneous when ap-

plied to the undisputed facts of this case. The injection of the name of Antone Himmelbauer into the instruction was not justified by the evidence, since he was not even remotely connected with any of the proceedings in relation to the levy upon, detention or removal of the property, but we think the jury was in no manner misled thereby and the error, if any, was harmless.

Instruction No. 11, however, especially in so far as it ap-[4] plies to the second cause of action, is erroneous. It reads: "You are instructed that if you find from a preponderance of the evidence in this cause that the property described in the complaint was property exempt from attachment, and that demand had been made therefor, your verdict should be for the plaintiff for the reasonable value of such property on the first day of April, 1918, not, however, exceeding the sum of $1,000, with interest thereon from said date at eight per cent per annum; also for such additional sum as you may find that she has incurred as expenses in the pursuit of said property, not exceeding the sum of $100.

"And upon plaintiff's second cause of action, if you find that the property is exempt and that she made demand therefor, and if you find from a preponderance of the evidence that the conduct of the officers, while in the house where the property was situated and during the time when the plaintiff was present, acted in a wanton and malicious manner and not reasonably necessary for the preservation and care of the property, you may find for the plaintiff such actual damages, if any, as you believe from the evidence she has suffered therefrom, and for such exemplary damages as you think she is entitled to under all the facts and circumstances in this cause; but you cannot award the plaintiff any damages for mere humiliation or injury to feeling in any event occasioned or caused by the mere fact of the attachment having been made upon the property, or the mere fact of the presence of the officers in caring for such property."

Under this instruction the jury was advised that at least three facts must exist before the plaintiff could prevail in

actual damages, *viz.*: 1. That the property in question was exempt; 2. That plaintiff made demand therefor; and 3. That the officers acted in a wanton and malicious manner. The second cause was not founded upon the theory that the property was exempt, the demand was admitted in the pleadings and the wanton and malicious conduct of the officers, if any, could only apply to exemplary damages, not to the actual, and hence it becomes apparent that the jury was not required to find the existence of any of these facts in order to base a verdict for actual damages in favor of plaintiff. The instruction was an incorrect statement of the law, and indulging the presumption that the jury followed the instructions of the court, was clearly prejudicial to the rights of appellant, and for this error plaintiff is entitled to a new trial.

The former order of this court is overruled, the judgment of the lower court is ordered reversed and a new trial granted.

Mr. Chief Justice Callaway and Associate Justices Cooper, Holloway and Stark concur.