[Civ. No. 4372.   Third Appellate District.—November 6, 1931.]

FERN ANDERSON et al., Respondents, v. C. J. PICKENS, Appellant.

J. Hampton Hoge, Len H. Honey and A. Dal Thomson for Appellant.

Charles Kasch for Respondents.

BURROUGHS, J., *pro tem.*—The plaintiffs are three minor children of one Harry Anderson, now deceased. They instituted this action by their guardian *ad litem*, to recover damages for the death of their father, through the alleged negligence of the defendant. The cause was tried by the court with a jury, and a verdict rendered in favor of the plaintiffs in the sum of $15,000. From the judgment entered in accordance with the said verdict the defendant has appealed.

The first assignment of error is based upon the claim that the deceased was, as a matter of law, guilty of contributory negligence, in riding with an intoxicated driver. The evidence discloses that the defendant C. J. Pickens and one H. L. Rambo left Oakland, California, on August 13, 1929, in a De Soto coupe automobile; that they were going on a hunting trip to Mendocino County; that they reached the town of Point Arena in said county about 8 o'clock in the evening. They then went to a hotel and had dinner. They stayed at that place for some time and then went to the house where said Harry Anderson lived and took him with them for the hunting trip. They left Point Arena at about 10:20 P. M. the same evening and went to a place called the Fire Lookout Station on Signal Ridge, and stopped there for a while and talked to the lookout man. They then started for a ranch called "Zinnis Ranch". The road over which they traveled was a very narrow, twisting, mountainous road. About three miles from the said station the car, instead of following a turn in the road, traveled straight ahead and ran over the grade and down some three hundred feet, and, apparently, in its descent turned over several times. Harry Anderson was killed and the other occupants of the car were injured. The accident occurred about twenty

minutes before midnight. There was some evidence in the record that Harry Anderson was driving the car, but the clear preponderance thereof shows that it was driven by the defendant C. J. Pickens. Upon the question of the intoxication of the driver Pickens, there is a conflict in the evidence, and the matter was properly submitted to the jury. The main question in dispute is whether or not said Harry Anderson knew or had reason to believe that the defendant Pickens was, by reason of intoxication, unable to drive the automobile. When Pickens and his companion Rambo left Oakland, they had with them a quantity of intoxicating liquor, and both admitted that from time to time on the trip between Oakland and Point Arena they had drunk considerable. gin. They also had intoxicating liquor while they were eating their dinner at the hotel in Point Arena. Anderson was not with them until after they had finished their dinner, when, as heretofore stated, Pickens drove to the place where Anderson lived and he then joined the party in the automobile. It is clear from the evidence that Rambo was intoxicated. Leroy Woodhead, the city marshal of Point Arena, testified that he stopped the party while they were all three in the car and told them that Rambo could not drive the car because he was intoxicated. Mr. Anderson assured him that Rambo would not drive, but that Pickens would. Mr. Woodhead, in answer to the following question: ''And Mr. Pickens was in such condition that you were content for him to drive? and he answered: ''Yes, I didn't think he was so drunk he could not drive.'' The defendant Pickens. testified that after leaving Point Arena he changed places with Harry Anderson and the latter drove the car. This witness also admitted that he had had a number of drinks but he thought he was all right. It is claimed that as a matter of law, Anderson knew that the defendant Pickens was intoxicated, and that even though Anderson was not driving the car, he had an opportunity to alight therefrom, and failing to do so, he was guilty of contributory negligence. It is clear from all of the evidence that Anderson was not intoxicated, nor, so far as the record discloses, had he been drinking. His mind was therefore clear. Appellant relies upon the case of *Jones* v. *Pacific Gas & Elec. Co.*, 104 Cal. App. 47 [285 Pac. 709], in support of the foregoing contention. However, the case cited is readily

distinguishable from the case at bar. In the case cited, the evidence preponderates in favor of the fact that the plaintiff knew that Cottrell, the driver, was drunk. The court so held. On appeal, the judgment was affirmed. There was considerable evidence showing that the driver of the car was intoxicated. The plaintiff herself testified to the drinking and the very erratic manner in which the car was driven. In summing up the evidence in the case cited, the court says: ''In the instant case the plaintiff had every reason to know, and we think it is conclusively shown that she did know that the defendant Cottrell was under the influence of intoxicating liquor at all times while driving the automobile after leaving the home of the plaintiff in North Sacramento. The plaintiff's own testimony shows that the party repaired to the home of the plaintiff and her husband for the purpose of drinking 'moonshine' or 'jackass brandy', and that after the supply at this home was exhausted, the party went to a bootlegging joint situate several miles distant, for the purpose of securing additional drinks. Under such circumstances, the cases which we have cited prohibit recovery on the part of the plaintiff, irrespective of whether the Pacific Gas and Electric Company had or did not have a legal right to maintain its power pole in the position that it occupied on the night of November 13 and morning of November 14, 1926. The testimony shows that the party involved in this proceeding knew of the existence of the pole, and saw the warning light, but notwithstanding this knowledge, the driver was apparently too drunk, and we might add that most of the party was too drunk to know where to drive to avoid the collision.'' In the instant case, the record discloses that practically all of the drinking by Pickens and Rambo was done before they were joined by Anderson; that when the party was stopped by the city marshal his objection went only to Rambo driving the car; that he considered Pickens sober enough to drive the car. According to the testimony of Pickens, while he had been drinking, ''he thought he was all right''. We think that the question of whether Anderson knew that Pickens was under the influence of intoxicating liquor, was a question of fact for the jury. By their verdict they determined that question adversely to appellant's claim and the evidence is sufficient to sustain the implied finding of the jury to that effect. (*Shields* v.

*King,* 207 Cal. 275 [277 Pac. 1043]; *Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 Pac. 513].)

█ A further complaint is made that the court erred in submitting to the jury the issues raised by the third count of the complaint. That count of the complaint is based upon what is commonly referred to as the "Guest Law", which went into effect at midnight on August 13, 1929. Said count alleged intoxication, wilfull misconduct and gross negligence. It is claimed that there is no evidence that the accident took place after midnight, and, therefore, the giving of the following instruction was erroneous, and that the effect of the instruction was to inform the jury that proof of defendant's intoxication was enough to permit the plaintiffs to recover, regardless of the contributory negligence of the deceased in riding with an intoxicated driver. The instruction is as follows: "If you find that the accident in question herein occurred on the 14th of August, 1929, that is to say, after midnight of the 13th of August, 1929, and that the deceased was a guest in the automobile of the defendant at the time of the accident, then, and under such circumstances, the plaintiffs are only entitled to recover upon the proof by a preponderance of the evidence that the accident was proximately caused by the intoxication, wilful misconduct or gross negligence of the defendant." It will be observed, however, that the foregoing instruction deals only with the question that the accident happened after midnight of August 13, 1929. There being no proof that the accident happened after the time stated, the giving of the instruction was harmless error and could not have prejudiced the defendant. It has been further held that the trial court is not required to state all of the law applicable to a case in a single instruction, and, if the instructions as a whole, correctly state the law, that is a sufficient answer to such a contention. (24 Cal. Jur. 857.) The court gave to the jury three instructions on the question of contributory negligence, all of which were submitted by the defendant, and which correctly stated the law of contributory negligence. We think there was no reversible error in giving the instruction complained of.

█ The court also gave an instruction to the effect that if the jury found from a preponderance of the evidence that the defendant Pickens was actually operating the automobile

at the time and place of the accident, and that he was negligently operating it, and, if they further found that prior to the accident Pickens became incompetent to safely operate the automobile by reason of an overindulgence in intoxicating liquor, and that he drank such liquor in the presence of Harry Anderson, and that if the latter knew that he was in such a condition, then it was negligence on the part of Harry Anderson to continue to ride with said Pickens, providing Anderson had a reasonable opportunity to alight from the automobile. The instruction as originally offered, left out the proviso concerning the opportunity for Anderson to alight from the automobile. This was added to the instruction by the court. It is claimed that because the evidence conclusively shows that Pickens and his companion Rambo were hilariously under the influence of alcohol during their stay for some hours in Point Arena that the instruction meets no issue in the case because Anderson need not have traveled with them at all, or could have alighted at the Fire Lookout Station. The evidence does not conclusively show that defendant Pickens was drunk, as was claimed by defendant's counsel. The evidence of the city marshal of Point Arena, as hereinbefore set forth, raised an issue as to the defendant's condition as to drunkenness, and therefore that question was properly left for the jury to decide.

Furthermore, there is an entire lack of proof that while Pickens and Rambo were in Point Arena, they were in Anderson's company until they drove to Anderson's house and took him in the automobile when they left Point Arena. If the jury decided that the defendant was under the influence of intoxicating liquor and that fact was known to Anderson only after he entered the car, then the instruction was perfectly proper, because under the circumstances he must have had a reasonable opportunity to alight before he would be chargeable with contributory negligence. Furthermore, in other instructions, the court very carefully instructed the jury on the effect of intoxication upon the rights and duties of the parties.

The third assignment of error is that the court erred in not giving an instruction on damages for pain and suffering sustained by the deceased. The defendant offered the following instructions: "You are hereby instructed that in determining the question of damages, in the event that

you should find the plaintiffs entitled to damages at all, you are not to consider the question whether or not the deceased suffered any pain prior to his death. In this action plaintiffs are not entitled to recover, if they may recover at all, for any detriment sustained by the decedent prior to his death." A notation upon the instruction is to the effect that it was not given because covered by other instructions. While it is claimed by the appellant that the subject matter of the instruction was not given in other instructions, the court gave the jury eight instructions covering the measure of damage in case the jury should find a verdict for the plaintiffs and they cover every possible phase of the measure of damage, and the jury were instructed frequently that the only damage which could be recovered was the pecuniary loss suffered by the plaintiffs. They were instructed that they could not allow damages for any sentimental value that the plaintiffs attributed to the loss of their father; that they, the jury, were not to be swayed by sympathy, passion or prejudice or any emotion against either party; that the plaintiffs could not recover any damages because of any grief, mental suffering or sorrow endured by them because of the death of their father; that they were entitled only to such damages as would pecuniarily compensate them for the injuries sustained; that they could make no allowance for exemplary damages, but only actual damages as the evidence shows to a reasonable certainty they had sustained; that they were not entitled to damages for sorrow and mental anguish caused them by the death of the deceased; that the purpose of the law was to compensate plaintiffs for the loss of a natural protector through the negligence of another and not as a solace for their wounded feelings; that, in case a verdict was rendered for the plaintiffs, they could award such damages only as would compensate the plaintiffs for the pecuniary loss suffered in being deprived of the support, care and comfort and society of their father, not exceeding the amount named in the complaint. We do not see how the jury could be misled in the measure of damages by the failure of the court to give the instruction complained of. We find no reversible error in the record. The judgment is affirmed.

Plummer, Acting P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 5, 1931, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1932.