WISE, RESPONDENT, v. STAGG, APPELLANT.

(No. 7,056.)

(Submitted April 17, 1933. Decided May 18, 1933.)

[22 Pac. (2d) 308.]

*Mr. J. B. C. Knight, Mr. S. P. Wilson* and *Mr. R. F. Gaines,* for Appellant, submitted a brief; *Mr. Gaines* argued the cause orally.

*Mr. P. E. Geagan* and *Mr. Edwin M. Lamb,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Plaintiff brought this action against the defendant to recover damages for personal injuries.

The plaintiff, a young unmarried woman twenty-four years of age, accepted the invitation of the defendant, a married man, to accompany him one evening in the month of September, 1929, from her home in Anaconda to Meaderville for

a ravioli dinner. The parties to this action, in the defendant's automobile, arrived at their destination about 7:30 in the evening. They visited a café in Meaderville, where they remained until approximately 8:30 or 9 o'clock, when they started for home. It appears intoxicating liquors could be easily secured at the café; during their stay the defendant purchased two bottles of wine, of which they consumed about one-half of one bottle. The residue of the wine they took with them. Following their dinner, they started for Anaconda in defendant's automobile. After proceeding a short distance, the defendant discovered his failure to pay for the dinner, and they returned to the café, plaintiff remaining in the car, and the defendant was absent for a period of some fifteen or twenty minutes. Thereupon they resumed their journey and proceeded to a roadhouse known as the Plantation, located on the highway between Butte and Anaconda. There they remained for a time. While there the defendant, in the presence of plaintiff, drank two or three whisky highballs. Plaintiff testified that she drank an equal number of drinks, the last of which was a drink of whisky, the others being beer. While the parties were at the Plantation, a scuffle ensued between them over a drink of whisky, and as a result it was spilled on the dress of plaintiff, to her displeasure and the ruin of her garment. It appears from the record that for something like a year plaintiff had been "going out" with the defendant, had attended similar dinners and drinking parties in Meaderville.

Plaintiff testified that at about 10:30 she was angry and in a hurry to return home, and, in furtherance of her desire, said, "Come on, let's go home." To this defendant replied, "All right." On the outside of the roadhouse she said, "You let me drive home," to which the defendant responded, "No, I am perfectly all right. I can drive." Her explanation as to her desire to drive the car home was that she was in a hurry and on previous occasions he had not proceeded home as rapidly as she desired; furthermore, she knew the defendant had been mixing his drinks, and she was doubtful as to what

their effect on him would be, fearing, among other things, that he might fall asleep, and thus allow the automobile to run into the ditch, or run into something. She testified that on a number of occasions the defendant had, when driving the car after drinking, or otherwise, developed a sleepiness while driving, and that on all such occasions with his consent and at his request she had driven his car; she had so driven his automobile about ten different times.

The parties then proceeded toward Anaconda over the highway, defendant driving; after proceeding approximately a mile and a half plaintiff thought he was sleeping and "poked him and said, 'Hey.'" At that time defendant was driving all right, and "the automobile was on the right side of the road," and "hadn't started to go out of a straight line." As they continued along the highway, plaintiff observed the bright lights of an approaching automobile around a curve. Simultaneously she observed that the defendant's head was drooping, and that then he "nodded his head up" and pulled the car to the left several feet. The collision between defendant's automobile and the other car ensued. Plaintiff, as a result of the collision, was rendered unconscious and recovered her senses at the hospital in Anaconda. Her nose was broken, and about half of one ear was practically severed. She suffered cuts under the chin, on the throat and on the inside of her left leg below the knee. The severed portion of the ear was restored to its former position with the aid of some eighteen stitches. The plaintiff was in the hospital for approximately ten days, and under the doctor's care for two months. Scars, after her recovery, remained under her chin and on the throat and on the inside of the left leg. The ear as a result of the injury was somewhat smaller, but her recovery in that respect was such that the injury was not readily noticeable.

The defendant offered no evidence, and at the close of plaintiff's case moved for a directed verdict, which was denied. The trial court instructed the jury. A verdict for the plaintiff was returned in the sum of $6,500. Motion for new trial was

made, heard and denied. The appeal is from the judgment on the verdict as rendered.

Defendant contends that the trial court was in error in failing to grant his motion for a directed verdict, upon the ground that from the evidence offered as a part of plaintiff's case she was guilty of contributory negligence as a matter of law. The same question was raised by defendant on objections to the giving of certain instructions, as well as on motion for new trial.

Defendant argues that the immediate cause of the collision was his act in falling asleep behind the wheel of the automobile which he was driving, and that the plaintiff negligently exposed herself to the probable consequences of such conduct on his part. Apparently his arguments proceed upon two theories: Either (a) that he was intoxicated at the time of the injury, or (b) that, if he was not intoxicated, he had a habit of falling asleep at the wheel, which was known to the plaintiff, and in either event it was contributory negligence for the plaintiff to proceed from the Plantation with defendant.

Generally, the question of contributory negligence is one of fact for the determination of the jury. It is only when but one reasonable conclusion can be reached from the facts that the court will determine the question as a matter of law. (*Mullins* v. *City of Butte,* 93 Mont. 601, 20 Pac. (2d) 626.)

The only evidence with reference to defendant's intoxication was that he, together with plaintiff, had drunk one-half of a quart of wine between 7:30 and 8:30 in the evening, and that between 9:30 and 10:30 of the same evening defendant drank either two or three whisky highballs; also during the period of time from 7:30 until 10:30 there were two intervals of from fifteen to twenty minutes each during which defendant was without the sight of plaintiff in places where intoxicating liquors were sold. No witness on the trial of the case expressed an opinion to the effect that defendant was intoxicated at any time on the evening in question. The evidence discloses no improper handling of the automobile until immediately pre-

ceding the collision. It appears from the record that there was passing the Plantation an hourly bus service between Butte and Anaconda, which accepted passengers at any point along the highway upon being flagged, all of which was known to the plaintiff. She was acquainted with the proprietors of the roadhouse and also with a girl by the name of "Laura," the piano player who was present at the time of their departure, on the evening in question.

If it could be said from the evidence that it was known to the plaintiff that the defendant was intoxicated, or that his intoxicated condition was palpably apparent to her, and if under these circumstances plaintiff then, as an ordinarily reasonable and prudent person, would not have entered the automobile driven by defendant, contributory negligence would follow as a matter of law. The evidence may have been sufficient to warrant such a finding, but we cannot say from the evidence in this record that the condition of defendant was one of intoxication or that he was apparently intoxicated, as the only reasonable conclusion from the testimony. Therefore the question of contributory negligence on the theory of intoxication of the defendant was one for the jury.

In the following cases, under somewhat similar facts wherein the defense of contributory negligence was urged; courts have held the question of contributory negligence of the guest riding with a driver who had partaken of intoxicating liquor with the plaintiff in the particular case, or was known to have partaken of the same by the plaintiff, to be properly a question for the jury: *Wolden* v. *Gardner,* 159 Wash. 665, 294 Pac. 574; *Jensen* v. *Chicago etc. R. Co.,* 133 Wash. 208, 233 Pac. 635; *O'Connell* v. *McKeown,* 270 Mass. 432, 170 N. E. 402; *Rau* v. *Smuda,* 175 Minn. 328, 221 N. W. 232; *Beckman* v. *Wilkins,* 181 Minn. 245, 232 N. W. 38; *Jennes* v. *City of Norwich,* 107 Conn. 79, 140 Atl. 119; *Denham* v. *Taylor,* 15 La. App. 545, 131 So. 614; *Anderson* v. *Pickens,* 118 Cal. App. 212, 4 Pac. (2d) 794. Compare *McNair* v. *Berger,* 92 Mont. 441, 15 Pac. (2d) 834.

The plaintiff testified with reference to the defendant's ▮ conduct: "I knew before the night of this accident and before I left my home that Mr. Stagg did have that failing—trouble of going to sleep when he was driving an automobile at night." But "he always asked me to drive the car for him." She testified that he would say, "You had better drive." When she made the suggestion at the time they were leaving the Plantation that she drive the car, defendant assured her that he was all right. The record discloses that until the time of the accident there was nothing about his driving which was the subject of criticism.

Our attention has been called to a number of cases by the defendant, wherein persons who suffer from some disability or habit preventing them from properly driving an automobile, well known to their guest, are permitted by the guest to drive, the guest, when injured, is held guilty of contributory negligence, a case in point being *Maybee* v. *Maybee,* (Utah) 11 Pac. (2d) 973. The driver of the car in that case was near-sighted, had worn glasses for many years, and always wore them when driving the automobile. The plaintiff had known almost her entire life of this defect in the driver's vision; she, while riding with such driver without her glasses, was reading a book; the driver, failing to observe a bad chuck-hole in the road, struck it, and injury to the plaintiff resulted. There was no question at any time about the defendant's inability to drive an automobile with reasonable safety without her eyeglasses. Plaintiff was held to be guilty of contributory negligence.

In the instant case, while the plaintiff knew of defendant's failing, she did make inquiry before the commencement of their trip as to the ability of defendant to drive, and she offered to drive. Her previous experience had been that when defendant felt sleepy he would request her to drive. Again we conclude, under the existing facts and circumstances and the knowledge of the plaintiff, it cannot be said that all reasonable men would agree that an ordinarily prudent person would have refused to ride with the defendant. Hence the

question of whether or not plaintiff was guilty of contributory negligence was properly one for the jury.

The defendant insists that, owing to certain alleged conflicts in her own testimony, she is not entitled to recover, unless the portion of her testimony which is least favorable to her contention is of such a character as to authorize recovery, in accordance with the rule announced by this court in *Wilson* v. *Blair,* 65 Mont. 155, 211 Pac. 289, 27 A. L. R. 1235. The contradictions in her testimony arise in this manner: On the trial of the cause, plaintiff testified that the automobile driven by defendant, when in close proximity to the car with which the collision occurred, was turned to the left by the defendant and into the path of the approaching car. It appeared that, on a former trial of this cause and on the taking of a deposition, plaintiff testified with reference to the same matter that the oncoming car was approaching on the wrong side of the road and that defendant turned his car to the left. The claimed contradiction is that in both instances plaintiff testified that the oncoming car was on the wrong side of the road, whereas here she testified to the contrary. On cross-examination she was confronted with a transcript of the testimony, and she admitted that she had previously so testified. The contradiction referred to in the case of *Wilson* v. *Blair,* supra, was not of this character. Here defendant was attempting to lay a foundation for impeachment of the witness. (Sec. 10669, Rev. Codes 1921.) She admitted testifying differently on the former occasions.

After contradiction of a witness by showing his inconsistent statements at other times, not only is such contradictory evidence not substantive evidence concerning its subject matter, but, as before, the credibility of the witness remains a question for the jury. (6 Jones' Commentaries on Evidence, 2d ed., 4769; *Thompson* v. *Los Angeles etc. R. Co.,* 165 Cal. 748, 134 Pac. 709; *Steele* v. *Kansas City So. R. Co.,* 302 Mo. 207, 257 S. W. 756.)

Defendant urges that certain of the instructions did not limit the consideration of the jury to the specific acts

of negligence relied upon, and that they were the statements of abstract questions of law. The record does not disclose, however, that defendant sought to supply these deficiencies by offering his own instructions. The practice of giving a statement of the issues as defined in the pleadings to the jury is commended, but error cannot be predicated upon failure to do so. (*Himmelbauer* v. *Union Bank & Trust Co.*, 68 Mont. 34, 220 Pac. 84.) If the defendant desired more specific instructions upon the subjects contained in those given by the court, it was his duty to offer them. (*Kirk* v. *Smith*, 48 Mont. 489, 138 Pac. 1088; *Gillies* v. *Clarke Fork Coal Min. Co.*, 32 Mont. 320, 80 Pac. 370; *Hollenback* v. *Stone & Webster E. Corp.*, 46 Mont. 559, 129 Pac. 1058.) Here the facts were few and simple; therefore it was not error to give instructions containing abstract statements of law. (*Edquest* v. *Tripp & Dragstedt Co.*, 93 Mont. 446, 19 Pac. (2d) 637.)

Lastly, it is urged that the damages are excessive. This question was presented in the trial court on motion for new trial, which motion was denied.

As a result of her injuries, plaintiff was confined in the hospital for ten days and eleven nights. There is no evidence as to the cost of this hospital service. Her doctor's bill was $500, which was testified to as being the reasonable value of the services rendered. Plaintiff had a cut under her chin and on her throat which left permanent scars. Approximately half of her ear was cut off, which was sewed on. Her nose was broken. She had a cut on the inside of her left leg below the knee which left a permanent scar. The hearing in her injured ear was impaired slightly. As a result of the injury to the ear, the blood supply is damaged, and it is subject to heat and cold more than her normal ear. Her doctor testified that her broken nose had entirely healed. Plaintiff testified with reference to pain, that subsequent to her injuries she had headaches and once in a while pain in her ear, principally in the wintertime. She also testified that she had some pains occasionally from the scar on her leg, and other pains during the time she was in the hospital. The doctor testified

that, so far as the condition of the ear is concerned, a casual observation would not disclose anything abnormal about it; but there are pieces of the ear missing, and the outside of the ear is somewhat smaller than it was. Prior to her injuries, plaintiff was employed in the doing of housework, and earned from $35 to $45 a month, including room and board, before the accident. She testified that she was unable to do this work for some time after the accident, and that she did not work until eight months thereafter.

The foregoing *résumé* of the testimony includes a description of all of the injuries sustained by plaintiff. The record is silent as to the size of the scars on her chin and throat. No indication appears in the record that these scars tend in any unusual manner to mar her appearance other than in the ordinary case of scars similarly situated.

This court has said that it is peculiarly within the province of juries to fix the amount of compensation to be paid for personal injuries, unless the result of their deliberation is such as to shock the conscience and understanding of the court. (*Mullins* v. *City of Butte,* 93 Mont. 601, 20 Pac. (2d) 626; *Staff* v. *Montana Petroleum Co.,* 88 Mont. 145, 291 Pac. 1042; *White* v. *Chicago etc. R. Co.,* 49 Mont. 419, 143 Pac. 561, 564. See, also, *Brown* v. *Columbia Amusement Co.,* 91 Mont. 174, 6 Pac. (2d) 874; *Autio* v. *Miller,* 92 Mont. 150, 11 Pac. (2d) 1039.) However, we are of the opinion that the award of the jury in this instance, considered in the light of the testimony in the record, was so liberal as to shock the conscience and understanding of this court, and that the verdict is clearly excessive. The injuries were of such a nature and character as not to in anywise interfere with plaintiff's ability to follow her usual calling, aside from the few months following the accident. Her injuries, in the main, were of a temporary nature.

We are of the opinion that the sum of $4,000 will fully compensate plaintiff for all of the pecuniary loss and damage which it can reasonably be said she sustained. It is desirable to terminate litigation as speedily as may be, and to that end

it is ordered that this cause be remanded to the district court, with direction to grant a new trial thereof, unless the plaintiff shall within fifteen days after the remittitur is filed in the district court consent in writing to a reduction of the amount of the judgment to the sum of $4,000. If such consent be given, the judgment will be modified accordingly as of the date of its original entry, and, as so modified, will stand affirmed. If such consent be not given, the court is directed to grant a new trial. The plaintiff will recover two-thirds of her costs on this appeal.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and STEWART concur.

MR. JUSTICE ANGSTMAN: I concur in what is said in the foregoing opinion, except so far as it holds that the damages awarded are excessive. While the award is liberal, it does not appear to me to be so much as to shock the conscience. The jury was asked to return a verdict for $20,500. Evidently, after due consideration of the extent of plaintiff's injuries as disclosed by the evidence, the jury, aided as it was by the opportunity, denied to us, of observing the appearance of the plaintiff, who bears permanent scars as a result of her injuries, fixed the award at $6,500. This was approved by the trial judge. I see no reason for condemning the verdict on the ground of passion or prejudice, and think the judgment based thereon should be affirmed.