COOLIDGE ET AL., RESPONDENTS, *v.* MEAGHER, APPELLANT.

(No. 7,398.)

(Submitted June 8, 1935.   Decided June 13, 1935.)

[46 Pac. (2d) 684.]

*Messrs. Hall & McCabe* and *Mr. E. E. Sweitzer,* for Appellant, submitted a brief; *Mr. E. J. McCabe* argued the cause orally.

Mr. *H. R. Eickemeyer,* for Respondent Coolidge, and *Mr. Louis P. Donovan,* for Respondent Treasure State Pipe Line Company, submitted a brief; *Mr. Eickemeyer* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Thomas A. Meagher, has appealed from a dual judgment against him and in favor, first, of Gus B. Coolidge, the plaintiff, on the cause of action alleged in his complaint, and, second, in favor of the Treasure State Pipe Line Company, a corporation, on its cross-complaint. The action arose out of an automobile collision between a "Ford Pickup" driven by Coolidge and owned by the pipe line company, and a Chevrolet sedan, owned and driven by Meagher, in which both cars were damaged and both the plaintiff and defendant Meagher injured.

The complaint of Coolidge alleges that the collision was due to the negligence of the defendant in driving on the wrong side of the highway and at a dangerous rate of speed. To this complaint the defendant filed an answer and cross-complaint in which he alleges that the collision resulted from the negligence of plaintiff Coolidge in driving on the wrong side of the highway, and that, at all times he, Meagher, was driving on his own side. He also alleges that Coolidge was the agent of the Treas-

ure State Pipe Line Company and joins the company as a defendant in his cross-complaint for damages. Coolidge replied, denying the allegations of the cross-complaint, and the pipe line company answered with a counterclaim against Meagher for damages to its automobile.

A trial was had which resulted in a verdict in favor of plaintiff Coolidge in the sum of $2,154.50, and in favor of the company in the sum of $200. Judgment was entered in conformity with the verdict, whereupon Meagher moved for a new trial and to tax costs; each motion was overruled, and he appealed, contending that the court erred in its ruling on each of these motions.

The first assignment of error raises the question as to the sufficiency of the evidence to support the verdict and judgment, the determinative question being as to whose negligence was the proximate cause of the collision. The collision occurred on the graveled highway between Shelby and Sweet Grass which runs straight, due north and south, for several miles each way from the place of the accident, but is not level, the summit of a hill being 223 feet north of the point where the cars met. The plaintiff was driving south in a Ford Pickup belonging to the pipe line company; the defendant was driving north in a Chevrolet sedan. Each car was visible to the occupants of the other only after the Ford came over the summit of the hill, at which time the defendant's car was from 350 to 600 feet distant. The highway has a driving surface 28 feet wide, with a ditch on each side. The evidence as to what transpired from the time the two cars were in view of the occupants of each until after the collision is in sharp conflict; therefore the judgment can be affirmed only if the evidence discloses substantial evidence in support of the verdict. This means that if the evidence is such as will convince reasonable men of its truth, it is substantial, but if all reasonable men must conclude that the evidence does not establish the case, it is not substantial evidence. (*Morton* v. *Mooney,* 97 Mont. 1, 33 Pac. (2d) 262; *In re Silver's Estate,* 98 Mont. 141, 38 Pac. (2d) 277.)

Coolidge and Miss Soderstrom, who was riding with him, testified that when first in view, defendant's car was approaching at a high rate of speed, 50 to 60 miles per hour, swaying in the gravel and traveling the center of the highway, more on the west side of the center than on the east; that, fearing it would skid into plaintiff's car, plaintiff drove as near the edge of the west side of the highway as he dared; that, when defendant was within 150 to 200 feet from them, he turned sharply to his own side of the road going clear to the shoulder, but, as it was soft, his car swung back diagonally across the highway and into plaintiff's car, knocking it back and into the ditch on the west side of the highway. Coolidge stated positively: "The front of his car struck the front fender or front of my bumper on the front left hand side of the radiator of my car." "There is no question in my mind at this time that the front of Mr. Meagher's car crashed right into the front and side of the car I was driving."

In corroboration of this version of the accident, evidence was adduced showing that broken glass and spilt oil were found at the point of the accident, all of which was to the west of the center line of the highway, and the sheriff and his deputy who investigated the crash testified that they traced tire tracks from tires of the make then on the Ford, along the west line of the highway to within ten feet of the Ford after the accident, and the tire tracks of another car from the soft shoulder on the east side of the highway diagonally across to the place of the collision.

This testimony was ample to support the verdict and judgment, despite the fact that the defendant gave a diametrically opposite version of the collision, as the conflict was resolved by the jury in favor of the plaintiff. (*Wise* v. *Stagg*, 94 Mont. 321, 22 Pac. (2d) 308; *Burns* v. *Eminger*, 81 Mont. 79, 261 Pac. 613.) However, counsel for defendant assert that the physical facts shown on the trial so contradict the oral testimony on behalf of the plaintiff as to render it unbelievable by reasonable men, and thus to destroy its substantiality.

It is first contended that the corroborative evidence of the sheriff and his deputy to the effect that the highway disclosed

the fact that Meagher's car crossed the road diagonally is rebutted by the testimony of one Snyder, who testified that he came upon the scene in a car and drove across the road to pick up the unconscious plaintiff, and that the record shows that but one car crossed the road at that point. However, the defendant, on whose behalf this statement is made, contradicted Snyder's testimony on this point. He testified that after the collision his car was over on the east side of the road; that he heard Snyder's testimony and "that was not what happened at the time," that Snyder drove up and stopped on the east side of the road to the rear of his car, and that he and Snyder, or one Fust, who was with Snyder, carried the injured man over to the Snyder car, and Snyder then drove around the Meagher car and on up the east side of the road. In this he was corroborated by Miss Soderstrom, who stated that after the accident she got into the Snyder car, which was "south of the Meagher car," and that the latter was moved so that the Snyder car could pass it. The jury was justified in finding that the diagonal crossing to the point of collision, as described by the sheriff and his deputy, was made by the defendant's car.

It is next contended by counsel for the defendant that the broken glass and oil spots on the road were east of the center, and that thus the physical facts support defendant's version rather than that of the plaintiff. It is true that the defendant and two of his witnesses testified that this evidence of the collision started at a point east of the center of the road, but Miss Soderstrom, the sheriff, and the deputy sheriff testified that it was to the west of the center of the road; so here again we have a direct contradiction in the evidence, resolved by the jury in favor of the plaintiff's version.

It is further contended that the disturbed condition of the surface of the road shows that the collision occurred west of the center; but it must be remembered that this was a graveled road, and the witnesses could only surmise as to the cause of the disturbed surface of which they testified, while other witnesses did not see such a condition, and that this evidence is contradicted by that above as to the tracks made by the two cars in

reaching the point of collision. One George Engle, a witness not heretofore mentioned, was even more positive as to the line of travel of the two cars just prior to the accident than was one of the witnesses whose testimony has been heretofore outlined on this subject. He testified that "the Ford car * * * was pretty close to the right hand side of the road * * * coming up to where the collision was. The tracks coming from the other way * * * we followed from the collision back to the east side of the road and then back to the west side of the road again further down." On cross-examination he said: "That was where this car came over and hit the Ford. The track from the east side of the road over to the Ford was a well defined clear track, * * * it did not get mussed up by other cars; * * * this track ended where the Ford car had been hit."

It is contended that the damage to the two cars, as shown by photographs taken after the collision, demonstrates that they did not meet head-on, and therefore supports defendant's version of the collision. There is little, if any, difference between the parties as to how the cars came together. The plaintiff testified: "The front of his car struck the front fender or front part of my bumper and the front left-hand side of the radiator." The defendant testified: "His left front wheel hit my left front wheel and the side of my car." The evidence shows that the left front wheel of the Ford was wrecked; the left front wheel of the Chevrolet was bent back under the car with its hub cap knocked off. The photographs show that the force of the impact was upon the front left-hand corner of the Ford, involving the headlight, radiator, bumper, fender, running-board, and door on that side of the car, while the Chevrolet was struck a glancing blow on the hub cap of the left front wheel, and the impact was just at the rear of that wheel; the front of the car was not damaged.

We see in the photographs nothing to render the testimony on behalf of the plaintiff unbelievable; the cars collided in the manner both plaintiff and defendant thought they did, except that the Chevrolet had swerved more to the right at the moment of

impact than either of them thought that it had. The course of a car traveling at a high rate of speed, out of control and in gravel cannot be reckoned mathematically, and the manner in which the two cars came together throws no light upon the question as to whether they were then on the east or west side of the road. The fact remains that the jury found in favor of the plaintiff on sharply conflicting evidence, and that the evidence supporting the verdict is substantial. It follows that we cannot set our judgment up against that of the jurors, who had the advantage of seeing the witnesses on the stand and hearing them testify, and the trial court has approved the verdict by its denial of defendant's motion for a new trial. (*Sullivan* v. *City of Butte,* 87 Mont. 98, 285 Pac. 184.)

It is contended that the verdict is so excessive as to show that it was rendered by reason of passion and prejudice. The evidence on which the jury awarded Coolidge $2,000 and his expenses is to the effect that he was knocked unconscious and remained in that condition for six or seven hours; he received cuts and bruises and seven or eight of his teeth were broken; he has a permanent three-inch scar over his right eye running through the eyebrow, which embarrasses him; he suffered considerable pain; his left arm was stiff and painful for two or three months, and he suffered pain in his head; at the time of the trial, nearly a year after the accident, he still had buzzing in his left ear and the side of his face was still numb.

There is no legal yardstick by which compensation for pain and suffering or bodily injuries may be measured (*McNair* v. *Berger,* 92 Mont. 441, 15 Pac. (2d) 834); the matter lies peculiarly within the province of the jury, and the award must of necessity depend upon the peculiar facts of the individual case (*Sullivan* v. *City of Butte,* supra; *Wise* v. *Stagg,* 94 Mont. 321, 22 Pac. (2d) 308, 309; *Hunt* v. *Van,* 61 Mont. 395, 202 Pac. 573). "So long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid, unless the result of their deliberation is such as to shock the conscience and understanding, it must be accepted as conclusive."

(*Autio* v. *Miller,* 92 Mont. 150, 11 Pac. (2d) 1039, 1045; *Fulton* v. *Chouteau County Farmers' Co.,* 98 Mont. 48, 37 Pac. (2d) 1025.) The facts considered, we cannot say that the verdict shocks the conscience and understanding to the extent that we can say the verdict was the result of passion and prejudice.

By his motion to tax costs, defendant sought to have the mileage of plaintiff's witnesses reduced from ten to seven cents per mile, in conformity with Chapter 16, Laws 1933 (sec. 1). This Act purported to amend section 4884, Revised Codes of 1921, which fixed the mileage of all state, county, and township officers, "jurors, witnesses, and other persons who may be entitled to mileage" at ten cents; the amendment merely reduced the mileage to seven cents; otherwise the old law was copied into the new. The title to the chapter, however, in so far as material here, declares it to be "An Act to Amend Section 4884 of the Revised Codes of Montana, 1921, Relating to Mileage of All Officers." Had the title merely given the section it was intended to amend, it would, perhaps, have been sufficient to withstand the charge that it violated the constitutional provision (sec. 23, Art. V) that the subject of every Act shall be clearly expressed in the title. (*Dowty* v. *Pittwood,* 23 Mont. 113, 57 Pac. 727; *State* v. *Courtney,* 27 Mont. 378, 71 Pac. 308.) However, as the title advised the members of the legislature and the public only that the Act related to the mileage of officers, whereas the section to be amended and the body of the amended Act deal with the mileage of persons other than "officers," it is misleading and violative of the constitutional provision cited; it did not clearly express the subject of the Act; from it alone a reader would gather that the amendment would relate only to mileage of officers. This misunderstanding would be strengthened by knowledge of the fact that the mileage of witnesses is fixed by section 4936, Revised Codes of 1921, which is not mentioned in the title to Chapter 16, Laws 1933.

The amendment is invalid in so far as it attempted to reduce the mileage of witnesses, as its title did not direct the attention truly to the purpose of the Act to deal with this subject. (*State* v. *Brown,* 29 Mont. 179, 74 Pac. 366; *State ex rel. Holliday* v.

*O'Leary,* 43 Mont. 157, 115 Pac. 204; *Kelly* v. *City of Butte,* 44 Mont. 115, 119 Pac. 171.)

The Legislative Assembly of 1935 evidently discovered the error into which the legislature of 1933 had fallen and amended the several sections of the Code relating to the mileage of persons other than "officers" to conform to Chapter 16, Laws 1933; in this Act section 4936 above is amended to allow witnesses but seven cents per mile (Chap. 18, Laws 1935), but this Act took effect long after the judgment herein was entered. The court, therefore, did not err in refusing to retax the costs.

Judgment affirmed.

ASSOCIATE JUSTICES STEWART, MORRIS and ANDERSON concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the above decision.